Chester G. GOODNIGHT, Appellant,

v.

Dr. John R. PHILLIPS, Appellee.

No. 7798.

Court of Civil Appeals of Texas.

Texarkana.

Sept. 5, 1967.

John H. Holloway, Houston, for appellant.

W. N. Arnold, Jr., Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellee.

Quinnan Hodges, Butler, Binion, Rice, Cook & Knapp, Houston, for intervenor.

DAVIS, Justice.

The opinion handed down in this case on June 27, 1967, is withdrawn and the following submitted in lieu thereof.

## NATURE OF THE CASE

A medical malpractice case. Plaintiff-appellant, Chester G. Goodnight, sued defendant-appellee, Dr. John R. Phillips, for damages alleged as the result of a hernia operation. Judgment was entered for appellee. Appellant has perfected his appeal and brings forward 24 points of error.

There are 6 volumes of the statement of facts and exhibits of the original trial and one volume of statement of facts on the motion for new trial. Counsel for appellant took two pages to state the nature of the case. The statement, as above set out, is all that is necessary. Appellant brought forward 24 points of error, many of which are multifarious and contain about 7½ pages of the brief. This seems to be contrary to Rule 418, Texas Rules of Civil Procedure. Justice Alexander of the Waco Court of Civil Appeals, later Chief Justice of the Supreme Court, wrote an opinion in Lang et al. v. Harwood, Tex.Civ.App. (1941), 145 S.W.2d 945, as to what should form the contents of a brief and the various parts thereof. By the points of error, appellant required the reading of the entire statement of facts and all the exhibits. In re: King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

Appellant alleged that on June 6, 1960, he sustained a left inguinal hernia while working for a 7-11 Grocery Store. (It was shown that he had previously received a

right hernia in 1944 that was repaired by Dr. Talley in Temple, Texas, without any resulting damage whatever).

After receiving the last hernia, appellant went to see Dr. Dave Kamanesky, his family physician, who diagnosed the case as a hernia and advised an operation. Appellant reported this to his employer. The employer sent appellant to see the appellee. The appellee likewise diagnosed the condition as a hernia. Appellant asked the appellee to certify the fact that he had a hernia so that he could get Dr. Kamanesky to do the operation. This, appellee would not do.

According to the evidence, appellee told appellant that Dr. Kamanesky was not specialized, or a specialist in the field of hernia operations. He told appellant that he would rather do the operation because he was more qualified to do the job. He further told appellant that he had done thousands of hernia operations. Appellee stressed the fact that he was a specialist and showed appellant many diplomas on the walls of his office, and stated that he had even operated on doctors. According to the testimony of appellant, appellee guaranteed the operation, that he would be back on his feet in 3 days after the operation, and, would be back to work in 3 or 4 weeks.

The evidence is conflicting about the agreement and the type of operation that was to be performed. Appellee testified that he had probably done 200 or maybe 300 hernia operations prior to this one. Appellant did not testify as to the type of operation that was to be performed. That there are three types of hernia operations: Ferguson, Bassini and the Halsted. The Halsted was the type used. The Halsted repair to the herniated area is done by silk thread, or by fascia lata, that is taken from the hip. The fascia lata type was performed.

Appellant alleged that as a result of the operation, the doctor closed the inguinal ring too tight; that it cut off the blood supply that goes into the cord that goes to the left testicle. The injury occurred on June 6, 1960. The operation was not performed until June 20, 1960. According to the evidence, on June 21, 1960, appellant's left testicle was immensely swollen and was causing severe pain the morning after the surgery. He called this fact to the attention of appellee, who, apparently, disregarded it. He kept calling the fact to the attention of the doctor, but there was not anything done to relieve the swelling as long as he was in the hospital. He testified that while he was in the hospital, he was kept under sedation, but his left side, his left testicle, and his left leg continued to bother him. Prior to the operation there was nothing wrong with the left testicle and he could enjoy the usual sexual affairs.

After the operation and the swelling had subsided in his left testicle, atrophy began. During the operation appellee had to lift up the cord that goes to his left testicle, and it seems that the fascia lata was sewed underneath. This had a tendency to shorten the cord. Appellant did not notice anything being wrong with the cord or the left testicle prior to the operation. Something had a tendency to shorten the cord, and, as a result thereof, the left testicle apparently was imbedded up in the groin at the time of the trial. During the swelling of the left testicle, they furnished appellant with a jockeystrap to hold the left testicle up to keep the strain off of it. He said Dr. Phillips told him that "it was just under normal procedure; it will eventually go away".

After the surgery, appellee would not give appellant a release so he could go back to work for the company where he was injured. It seems that appellee demanded a release from appellant for any and all liability for both himself and the company before he would certify him as able to go back to work.

Apparently, appellee could realize the seriousness of the situation that existed. He secured the services of a Dr. Stackhouse to examine Goodnight. Dr. Stackhouse came to the office of appellee on August 24, 1960, and proceeded to examine him. Appellee had already advised the removal of the left testicle. Dr. Stackhouse advised its removal.

There was evidence that was admitted during the trial that the company insurance had paid for the operation. This was done by appellee on questioning by appellant's counsel. Appellant offered evidence to show that they had tried to get the hospital records. It was during the trial of the case that appellee and his attorney admitted that they had the records. Appellee offered the hospital records in evidence which showed that it was a Workman's Compensation Case.

After the jury had answered some of the special issues, attorney for appellant filed a motion to disregard certain of the jury findings and to declare a mistrial. It was overruled. Appellant filed a motion for new trial, and amended motion. The amended motion for new trial was overruled. Special Issue No. 3 that was submitted to the jury was not answered. The third Special Issue inquired if the jury found from a preponderance of the evidence that a failure to provide a sufficient opening through the inguinal ring so as to allow a normal supply of blood to plaintiff's left testicle was a proximate cause of the damages. The jury had answer to Special Issue No. 1 that the inguinal ring had been closed too tight to permit a normal supply of blood to appellant's left testicle. The trial court answered Special Issue No. 3 on what he contended was "a matter of law". The issue, as submitted, presented a "fact question". The trial court was not allowed to answer the same. The answer of the trial court to this issue appears in the judgment as follows:

"And it appearing to the Court, after having considered the special issues submitted by the Court to the jury and the answers to the jury to such special issues, that the unanswered Special Issue No. 3 of the Court's charge should, as a matter of law, be answered 'We do', and the Court, upon its own motion, finds that as a matter of law the failure to provide sufficient opening through the inguinal ring so as to permit normal supply of blood to plaintiff's left testicle was a proximate cause of the dam-

age to plaintiff's left testicle, and it is, therefore ORDERED, ADJUDGED AND DECREED by the Court that as a matter of law that Special Issue No. 3 shall be answered 'We do', and that plaintiff's motion to disregard the jury's findings and for a mistrial shall be in all things overruled and denied to which action and rulings and orders of the court plaintiff in open court duly excepted and objected."

Special Issue No. 3 could have been answered, "We do"; or, "We do not". The loss of the blood supply to the left testicle could have been caused by the swelling of the cord prior to the operation; or, it could have been caused by closing the inguinal ring too tight, or, by post operative swelling.

█ There should not have been any reference made to insurance by either side. 56 Tex.Jur.2d 441, Sec. 99, and authorities cited thereunder; 56 Tex.Jur.2d 445, Sec. 101, and authorities cited thereunder; and, 56 Tex.Jur.2d 616, Sec. 273, and authorities cited thereunder. To consider the question of insurance during the jury deliberation constituted jury misconduct and constitutes ground for a new trial, or a reversal of any judgment that has been entered. 57 Tex. Jur.2d 19, Sec. 385, and authorities cited thereunder.

This case must stand or fall on the question of whether or not the jury was guilty of misconduct, as a matter of law, that probably caused damage to the appellant and that the trial court abused his discretion to overrule the motion for a new trial. By his point No. 4, appellant complains of the jury misconduct. Although the point is multifarious, we can tell from reading the brief why he is making such complaint. Appellant says the trial court erred and abused his discretion because of the jury misconduct which was shown, as a matter of law, which prevented him from having a fair and impartial trial, and resulted in an improper verdict. That such jury misconduct, as a matter of law, was calculated to be harmful to him, and, in all reasonable

probability, was prejudicial. He gives the following reasons:

(1) The jury received new evidence of a material and prejudicial nature relating to payment of workmen's compensation benefits which caused juror Calhoun to change his vote on the negligence issue because he was informed by other jurors that appellant was trying to collect twice for the same injury.

(2) The jury was improperly informed by other jurors that for an agreement to be binding under Special Issue No. 4 must be in writing and signed by the appellee, causing three jurors to change their vote based upon such erroneous statement of the law.

(3) The jury received new evidence, considered their personal experience relating to their experiences with other doctors under the agreement issue; and,

(4) The lady juror was so prejudiced against appellant that he could not secure a fair and impartial trial.

The jury began its deliberations about 11:35 A. M. on February 24, 1966. They were unable to answer any Special Issues that afternoon. They reported that they were hopelessly deadlocked and could not reach a verdict. They requested of the trial court the meaning of the words "cut and sever" and also the meaning of the word "agreement". They requested a dictionary so they could look up the meaning of certain words. The trial court refused the request and referred the jury to his charge. The trial court sent the jurors home and instructed them to return the next day and begin their deliberations again.

The jury returned on February 25, 1966, and began deliberations at 9:00 A. M. They proceeded to answer some of the special issues. According to the record, the jury verdict was returned at 12:20 P. M. that day. The attorney for appellant secured an affidavit from a juror, Thomas J. Calhoun, Jr., where he swore to the facts that the jury

was unable to reach an answer on any of the special issues during the first day of deliberation, and on the second day they were still unable to reach an answer on issues 1, 2 and 3 and had to skip to issue No. 4. He swore that he and 3 others had been voting "we do" in answer to this special issue, but all the other jurors took the position that an agreement to be legal had to be in writing and signed by the doctor. He swore in the affidavit and on the hearing on the motion for new trial that because of this reason he changed his vote. Freddy E. Zlomke, Jr., swore to the same fact and also swore that he would have voted to give the man $100,-000.00 for his damages. Wilburn Hanisch swore to the fact that he had been voting "we do" in answer to Special Issue No. 4, but was convinced by the jurors' argument that the agreement had to be in writing and signed by Dr. Phillips to be legally binding, and, therefore, he changed his vote. All these jurors swore to these facts, which were clearly outside of the court's charge, two of them swearing that they would give $25,000.00, and $35,000.00 for his damages.

It was shown in the hearing on the motion for new trial that there was much discussion about the workmen's compensation insurance during the jury deliberation. During the hearing on the amended motion for new trial, the attorney for Dr. Phillips asked Freddy E. Zlomke, Jr. the following question: "O, well, didn't he (the attorney for Goodnight) read to you at the time that the man had gotten $5,689.00 in insurance?" The question was objected to and the objection was sustained. There was much testimony about what went on during the jury's deliberation about how much money was paid to Goodnight by the workmen's compensation insurance company; and, in overruling the motion for new trial, the trial court had this to say:

"ORDER OVERRULING PLAINTIFF'S AMENDED MOTION FOR NEW TRIAL

"BE IT REMEMBERED that on this the 6th day of June, 1966, came on for

hearing the plaintiff's amended motion for new trial in the above entitled and numbered cause, and came the parties through their attorneys and announced ready for hearing thereon, and the Court proceeded to consider the motion for new trial, together with hearing of evidence pertaining to the allegations of jury misconduct, *and the Court having duly considered such evidence, motion, and argument of counsel thereon, is of the opinion that the Motion should be in all things overruled. However, the Court finds as a fact, from the evidence offered on jury misconduct, that the jury did discuss workmen's compensation insurance and did consider the fact that the medical expense had been paid by workmen's compensation carrier for plaintiff's employer, as testified to by the jurors, but the Court concludes as a matter of law that such discussion was not reasonably calculated to be prejudicial to the plaintiff so as to prevent him from having a fair and impartial trial. The Court further finds that the jury misconduct, if any, relating to statements of the jurors as to what the Court meant by the word 'agreement' in Special Issue No. 4, was insufficient for the Court to find that such misconduct did in fact occur, or that if it did occur that it was reasonably calculated to be prejudicial to the plaintiff, nor that it caused or was calculated to cause an improper verdict as a matter of law.*

"It is, therefore, ORDERED, ADJUDGED AND DECREED by the Court that the Plaintiff's Amended Motion for New Trial be and the same is hereby in all things OVERRULED.

"To which action, order, findings, judgment and rulings of the Court the plaintiff in open court duly excepted and gave notice of appeal to the Court of Civil Appeals for the First Supreme Judicial District of Texas at Houston, Texas.

"SIGNED AND ENTERED this 21st day of June, 1966." (Emphasis added)

One of the jurors, Mrs. D. J. Westmoreland, was called by Dr. Phillips on the amended motion for new trial. To best sum up her testimony, she took the position that the operation had been paid for by the workmen's compensation insurance carrier, that he had already been paid, or was being paid, workmen's compensation insurance and was trying to *recover twice* for the same injury. She further took the position that Goodnight was not entitled to anything for his pain and suffering. She testified very positively that there was nothing said about the agreement having to be in writing. There was more evidence that constituted misconduct as a matter of law.

Rule 327, Tex.R.Civ.P., formerly Art. 2234 of the Rev.Civ.Stat., reads as follows:

"Where the ground of the motion is misconduct of the jury or of the officer in charge of them, *or because of any communication made to the jury or that they received other testimony*, or that a juror gave an erroneous or incorrect answer on voir dire examination, the court shall hear evidence thereof from the jury or others in open court, *and may grant a new trial if such misconduct proved, or the testimony received, of the communication made*, or the erroneous or incorrect answer on voir dire examination, *be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party.*" (Emphasis added)

In the case of Wair v. State, Tex.Civ. App.1961, 349 S.W.2d 637, W.R., N.R.E., this court reversed the judgment of the trial court on the ground that it appeared beyond question and "as a matter of law" that misconduct did occur; and, in the alternative, if there was some evidence to support the trial court's implied finding of "no misconduct", then we held that the finding was against the overwhelming weight and preponderance of the evidence. The Supreme

Court, 163 Tex. 69, 351 S.W.2d 878 (1961) in a per curiam opinion, held:

"The question is whether this finding of the trial judge should be tested by (1) the great weight and preponderance of the evidence, or by (2) abuse of discretion."

The Supreme Court then went on to hold:

" * * * We hold that the occurrence of jury misconduct was conclusively proved as a matter of law and that the trial court clearly abused its discretion in not granting a new trial. Probable injury of a jury's misconduct, once misconduct has been found to have occurred, is a question of law for the trial court and reviewing courts to determine from a review of the entire record, and from such a review we conclude that the respondents probably were injured from the quotient verdict. City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259 (1944).

"The application for writ of error is therefore refused, no reversible error."

The trial court found as a fact "that the jury did discuss workmen's compensation insurance and did not consider the fact that the medical expenses had been paid by the workmen's compensation carrier", but he concluded, "as a matter of law, that such discussion was not reasonably calculated to be prejudicial to appellant, and prevented him from having a fair and impartial trial. With this finding, we do not agree. Since it is clearly a question of law, we follow the Supreme Court of Texas in State v. Wair, supra, that such holding was a clear abuse of his discretion. Wilson v. Scott, Tex.1967, 412 S.W.2d 299. It is a well known principle of the law that a person may be injured while in the course of his employment and recover workmen's compensation, and, in some cases, can sue the wrongdoer and recover additional money. This is so well settled that the citation of authority is unnecessary. We hold that the occurrence of jury misconduct, and, as a matter of law, probably resulted in in-

jury to appellant and that the trial court clearly abused its discretion in not granting a new trial. Wair v. State, Tex.Civ.App., 349 S.W.2d 637, supra. The point of error is sustained.

By points 3 and 17 appellant says the trial court erred in accepting the return of the jury's verdict because the same was incomplete in that they failed to answer Special Issue No. 3 and in overruling his exceptions to the court's charge as to the Issues 8 and 9. Issues 3, 8 and 9 inquired about the loss of blood supply to the left testicle. Had the jury answered Special Issue 3, Special Issues 8 and 9 were not necessary. The loss of blood supply to the left testicle could have been caused by the injury itself, by closing the inguinal ring too tight, by the spermatic cord being swollen at the time of the operation, or it could have been caused by post-operative swelling. It was a fact question and could not be answered "as a matter of law". Since the case has to be tried again, these points are sustained.

By his 20th point appellant complains of error of the trial court in sustaining exceptions to a plea of res ipsa loquitur. There are only very, very few instances where a pleading of res ipsa loquitur is applicable in medical malpractice cases. Where negligence is alleged against a doctor, it must be proved by expert medical testimony before the case can be developed. The doctrine of res ipsa loquitur is not applicable and recovery cannot be had without medical proof that the negligence actually occurred. Shockley v. Payne, Tex.Civ.App. (1961), 348 S.W.2d 775; Bell v. Umstattd, Tex.Civ.App. (1966), 401 S.W.2d 306; and, Louisell and Williams, Trial of Medical Malpractice Cases, § 14.05 and 14.06. The point is overruled.

It is not necessary to discuss the other points of error. I have examined them carefully and will say this: Where an issue of fact is made by the pleadings and the evidence, the issue must be submitted and where there is any damages or injuries

shown and a special issue is submitted the jury must place a value thereon. Be that as it may, all other points of error are overruled.

The judgment of the trial court is reversed and the cause is remanded.