**Sidney E. STINNETT et ux., Appellants,**

v.

**William T. PRICE, Appellee.**

**No. 7977.**

Court of Civil Appeals of Texas.

Amarillo.

Sept. 29, 1969.

Rehearing Denied Nov. 3, 1969.

Harris E. Lofthus, Amarillo, for appellants.

Stone, Stone & Chambers, Stokes, Carnahan & Fields, Amarillo, for appellee.

NORTHCUTT, Justice.

This is a medical malpractice case. Sidney E. Stinnett and wife, Dorothy Stinnett, brought this suit against Dr. William T. Price, a neurosurgeon, seeking to recover damages received by Mrs. Stinnett caused by the negligence of Dr. Price in performing an angiogram. At the conclusion of plaintiffs' case the trial court granted defendant's motion for instructed verdict and judgment rendered that the plaintiffs recover nothing. From that judgment the plaintiffs perfected this appeal. Hereinafter the parties will be referred to as they were in the trial court, the Stinnetts as plaintiffs and Price as defendant.

This appeal is presented upon three points of error contending the court erred in granting an instructed verdict since there was sufficient evidence upon which plaintiffs were entitled to go to the jury; that the court erred in sustaining appellee's exception to plaintiffs' plea of res ipsa loquitur and in refusing to allow plaintiffs' trial amendment.

Mrs. Stinnett had been a patient of Dr. Jere B. Johnson for some time before going to Dr. Price. The plaintiffs proved by Dr. Johnson the history of the condition of Mrs. Stinnett while being treated by Dr. Johnson. That history was substantially as follows: Mrs. Stinnett consulted Dr. Johnson on September 8, 1965; November 24, 1965; December 10, 1965; January 11, 1966; and June 25, 1966. On all of these visits her main complaint was severe headaches. On her last visit, June 25, 1966, she complained of severe headaches which were getting worse. At this last visit, Dr. Johnson concluded to recommend neurological examination by Dr. Price and if nothing was found, would have Dr. Brittain or Dr. Pennal in consultation.

Dr. Johnson testified that Mrs. Stinnett was complaining of severe headaches which had been going on for a time from September, 1965, to June, 1966; it was accompanied by severe episodes; that Mrs. Stinnett on this June 25, 1966 visit stated the headaches were getting worse and she stated that she was having noises in her ear. Dr. Johnson also testified those symptoms were enough in his mind that a brain tumor had to be ruled out. On that same day, Dr. Johnson called Dr. Price by phone and explained all these conditions to him and Mrs. Stinnett was placed in the hospital and Dr. Price then took charge of her as his patient.

Dr. Price performed a series of tests consisting of ordinary skull X-ray, brain scan, spinal tap and an echoencephologram. The skull X-ray indicated a pineal shift of five millimeters, ordinarily symptomatic of a growth in the brain or a malformation of blood vessels. From these tests, Dr. Price concluded that an angiogram was necessary and Dr. Johnson agreed that that was what should be done. Sometime between two and three hours after the angiogram was given Mrs. Stinnett, she had a stroke and was paralyzed on her right side. The defendant testified he felt that the stroke was in some way related to the injection of the contrast media, but the exact mechanism he just didn't have any idea. He further testified that he had done probably 1,300 angiograms and had never seen one like this. It is plaintiffs' contention that defendant did not inform Mrs. Stinnett of the risks in performing an angiogram.

■ It is stated in Wilson v. Scott, 412 S.W.2d 299 by the Supreme Court as follows:

"Physicians and surgeons have a duty to make a reasonable disclosure to a patient of risks that are incident to medical diagnosis and treatment. This duty is based upon the patient's right to information adequate for him to exercise an informed consent to or refusal of the procedure. Salgo v. Leland Stanford Jr. Univ. Bd. of Trustees, 154 Cal.App.2d 560, 317 P.2d 170 (Ct.App.1957); Bowers v. Talmage, 159 So.2d 888 (Fla.App. 1963); Natanson v. Kline, 186 Kan. 393, 350 P.2d 1093, on rehearing, 187 Kan. 186, 354 P.2d 670 (1960); 60 Colum.L. Rev. 1193 (1960); Annot. 99 A.L.R.2d 599 (1965)."

However, there is no evidence in this case that defendant did not disclose to Mrs. Stinnett the risks that were incident to this treatment. Defendant testified that he told her that he needed to do an angiogram because of the shift of the pineal gland; that he advised her that this test was much bigger than any test she had previously had and that it had definite risks involved, and that she asked him what those risks were, and he told her there was a possibility of a stroke.

■ The fact that the testimony of an interested witness is not accepted as evi-

dence in his favor does not operate to convert it into evidence against him. Texas & N. O. R. Co. v. Grace, 144 Tex. 71, 188 S. W.2d 378; Texas & Pacific Ry. Co. v. Brown, 142 Tex. 385, 181 S.W.2d 68; R. T. Herrin Petroleum Transport Co. et al. v. Proctor, 161 Tex. 222, 338 S.W.2d 422.

Since Mrs. Stinnett gave her consent for the defendant to perform the angiogram and there is no evidence that defendant did not inform her of the risks involved, there was no issue to be submitted that the defendant was negligent in failing to inform the plaintiffs of the risks.

■ As to plaintiffs' contention that the court erred in sustaining their plea of res ipsa loquitur, if considered an error, it would be a harmless error under this record. We think the rule of res ipsa loquitur is well expressed in the case of Goodnight v. Phillips, 418 S.W.2d 862 (n. r.e.) where the court stated:

"By his 20th point appellant complains of error of the trial court in sustaining exceptions to a plea of res ipsa loquitur. There are only very, very few instances where a pleading of res ipsa loquitur is applicable in medical malpractice cases. Where negligence is alleged against a doctor, it must be proved by expert medical testimony before the case can be developed. The doctrine of res ipsa loquitur is not applicable and recovery cannot be had without medical proof that the negligence actually occurred. Shockley v. Payne, Tex.Civ.App. (1961), 348 S. W.2d 775; Bell v. Umstattd, Tex.Civ. App. (1966), 401 S.W.2d 306; and, Louisell and Williams, Trial of Medical Malpractice Cases, § 14.05 and 14.06. The point is overruled."

While the plaintiffs, on direct examination, were introducing the evidence of Dr. Ellis, a neurological surgeon, the following hypothetical situation was given and the questions and answers concerning that situation were as follows:

"Q. With regard to the clinical problem presented, doctor, let me give you a hypothetical situation.

Here is a 42 year old female who has apparently been suffering from headaches for a period of about ten months. There is some question about she has had pains in her legs, and some pains in her back;

And she might have had some noises in her head, and on a particular occasion consulted a general practitioner with regard to relief for this headache, to discover how or what is causing it.

And she is referred to a neurosurgeon who on the basis of this information performed the test that you have related here.

A. Yes.

Q. And other than these symptoms, the woman was working all of the time, every day, very competent secretary, and just ordinarily as active as anybody is; and these tests reveal a pineal shift of five millimeters;

Now assuming that the woman also has apparently on occasions then had vomiting, and this pineal shift turned up on an x-ray.

I take it then that that would justify you in proceeding to perform an angiogram?

A. I would have no hesitation in a situation that you stipulate, that my next suggestion would be an angiogram. A five millimeter pineal shift is definitely not to be laughed at.

With that story, particularly, and with a shift in the x-ray of the pineal, I would think the obligation of the neurosurgeon is to prove that there is or isn't a mass lesion.

And I say that carefully. It need not necessarily be a tumor. With the story of noises in the head, it could have been a blood vessel tangle that is occupying space too.

My next step in this situation would certainly be to advise arteriograms or angiograms."

We are of the opinion the plaintiffs have in this case proven by medical testimony that defendant was not negligent in performing the angiogram.

The only issue as to the negligence of defendant that could be considered herein is the fact that Mrs. Stinnett had a stroke after the angiogram was performed. It seems to be well settled in this state that negligence is never imputed from results nor any inference thereof indulged against a physician. Kaster v. Woodson et al., Tex.Civ.App., 123. S.W.2d 981 (writ refused); Devereaux v. Smith, Tex.Civ. App., 213 S.W.2d 170 (n.r.e.) and cases there cited; Floyd et ux. v. Michie, Tex. Civ.App., 11 S.W.2d 657.

It is stated in Bell v. Umstattd, Tex.Civ. App., 402 S.W.2d 306 (writ dismissed) that the doctrine of res ipsa loquitur does not apply in malpractice cases. We have carefully considered all of the plaintiffs' points of error and overrule all of them. The judgment of the trial court is affirmed.