Voncell **HUNTER**, Appellant,

v.

Dr. Leonard **ROBISON** et al., Appellees.

No. 17931.

Court of Civil Appeals of Texas,
Dallas.

Oct. 26, 1972.

Rehearing Denied Nov. 22, 1972.

Joe N. Boudreaux, Baker, Foreman & Boudreaux, Dallas, for appellant.

Tim Kelley Thompson, Knight, Simmons & Bullion, James A. Williams, Bailey, Williams, Weber & Allums, Dallas, for appellees.

BATEMAN, Justice.

This is a medical malpractice suit against appellees Drs. Leonard Robison, Walter Patton and Ralph D. Mahon, and East Dallas Hospital, Inc. At the close of the appellant's evidence the trial court sustained Dr. Mahon's motion for instructed verdict. At the close of all the evidence the court submitted the case on special issues as to the other defendants. The jury found that Dr. Robison was negligent in failing to obtain an electrocardiogram prior to the time he did, and in failing to administer sodium bicarbonate to appellant sooner than he did, but declined to find that either failure was a proximate cause of appellant's injuries. All other findings were favorable to appellees including the answer of "None" to the damage issue. Appellant appeals from a "take nothing" judgment based on this verdict.

By her points of error Nos. 1 through 14 she complains of the inclusion in the definition of proximate cause of the phrase "unbroken by any new and independent cause," followed by the definition of new and independent cause. The two definitions thus attacked appear in the charge of the court, as follows:

" 'Proximate cause', as that term is used in this charge, means that cause which, in its natural and continuous sequence, unbroken by any new and independent cause, produces a result, and without which cause, such result would not have occurred, and which result, or some similar result, would have been reasonably foreseen by a person of ordinary care in the light of the attending circumstances.

" 'New and Independent Cause', as that term is used in this charge, means the act or omission of a separate and independent agency not reasonably foreseeable, which destroys the causal connection, if any, by the act or omission inquired about and the injury in question, and thereby becomes the immediate cause of such injury."

Appellant objected to the definition of proximate cause on the grounds that there was no evidence, and insufficient evidence, to support the submission of same and because it constituted a comment on the weight of the evidence, being calculated to indicate to the jury that a new and independent cause was present and was raised under the evidence, thus unduly emphasizing the appellees' theory of the case and leaving the jury free to speculate about a possible separate and independent agency not raised by the evidence, all of which was confusing and misleading to the jury and prejudicial to appellant. In connection with these objections she requested a definition of proximate cause substantially the same as the one submitted except that it omitted the phrase "unbroken by any new and independent cause."

The evidence shows without dispute that appellant, who was forty-two years of age at the time, was undergoing a hysterectomy under a general anesthetic on June 15, 1962; that during the operation she suffered a cardiac arrest, or heart stoppage; that shortly after the operation it was discovered that she had suffered what is known as a transverse myelitis to her spinal cord at approximately the level of the eleventh thoracic vertebra, resulting in permanent paralysis below the waist. There are two recognized types of cardiac arrest. One is asystole, meaning absolute cessation of heart movement, the other being known as ventricular fibrillation, which means that the heart is vibrating, quivering or contracting but insufficiently and ineffectively. In either case the heart is not functioning efficiently, and the arrest constitutes a medical emergency because the various organs of the body, including the brain, need oxygenated blood and will be damaged if they do not get a sufficient supply thereof.

In this case the cardiac arrest was discovered about fifteen minutes after the operation began. Emergency treatment was given and the heart resumed beating about one hour and twenty minutes later. The

electrocardiogram was obtained about an hour after the cardiac arrest was detected. It showed the type of arrest to be ventricular fibrillation. As soon as the arrest ended the hysterectomy was resumed.

■ We think there was ample evidence to support the jury's failure to find from a preponderance of the evidence that Dr. Robison's negligence, as found by the jury, was a proximate cause of appellant's injuries. With respect to the delay in obtaining the electrocardiogram, it must be remembered that this device serves only to indicate the nature and extent of cardiac activity. It does not cure anything. Without unduly lengthening this opinion by reciting all of the evidence on the point, we may properly say that the jury may very well have concluded that, even though in the exercise of ordinary care Dr. Robison should have obtained the electrocardiogram sooner than he did, the treatment that was given happened to be the type of treatment best suited for the ventricular fibrillation indicated by the electrocardiogram, and that the failure to obtain it sooner did not in fact cause any injury whatever to appellant.

There was no evidence that anything done by any of the appellees actually caused the cardiac arrest, the only contention being that their failure to do certain things to end the arrest was negligence and a proximate cause of the injuries. There was competent expert testimony, which the jury had a right to believe, that the brain is the organ of the body most sensitive to an insufficient supply of oxygenated blood, even more sensitive than the spinal cord, and that sufficient oxygenated blood must have gotten to the various parts of the body during the cardiac arrest since there was no permanent brain damage. There was also expert testimony that if during the cardiac arrest sufficient blood has been pumped to avoid permanent brain damage, and the heart is resuscitated, the arrest has been successfully treated, and that the poor circulation must have been caused by something such as a plaque or a clot blocking

the flow of blood in the anterior spinal artery in this area. One doctor testified that some local phenomenon evidently caused the poor circulation to this specific area of the spinal cord; that a blood clot in the artery was a good possibility, but that a plaque, or anatomical configuration, was more likely. There was also expert opinion testimony that appellant's transverse myelitis was caused by an occlusion of the anterior spinal artery and could have occurred at any time during the arrest, or shortly thereafter; that it was impossible to tell just when the cells in the spinal cord at this point died.

Appellant argues that an earlier electrocardiogram would have disclosed the ventricular fibrillation, and that this disclosure would have led to the use of a defibrillator, a machine which would have resuscitated the heart, but it was shown that defibrillators were not in general use in Dallas at the time of this surgery. Moreover, the jury in answering Special Issue No. 9 refused to find that Dr. Robison was negligent in failing to use a defibrillator, and appellant does not complain of this finding. Moreover, there was no evidence that the use of a defibrillator would necessarily have resuscitated appellant's heart, and it was shown that in a study made subsequent to appellant's surgery more than half the patients sustaining a cardiac arrest during surgery did not survive even with the use of a defibrillator.

Sodium bicarbonate is used primarily to treat a condition of acidosis which develops during cardiac arrest. Two doctors testified that in their opinion the failure of Dr. Robison to administer sodium bicarbonate sooner was not a cause of appellant's injury, and another doctor, called by appellant, admitted on cross-examination that if acidosis is treated following cardiac arrest, and the patient is not troubled by it thereafter (as was true in this case) it has not been a factor contributing to the injury.

■ This testimony was sufficient to support a conclusion by the jury that there

was sufficient oxygenated blood to avoid irreparable brain damage or damage to the spinal cord. There was enough evidence to support a conclusion that some other agency, unrelated to the negligence of Dr. Robison, was the immediate cause of the poor circulation at the site of the spinal cord injury. This being true, appellees were entitled to have the phrase relating to new and independent cause included in the court's definition of proximate cause.

However, even if the evidence was not sufficient to raise fact issues as to new and independent cause, we are not persuaded that the inclusion of that phrase in the definition of proximate cause was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Included also in the court's charge was the admonition that the jury should consider only the evidence introduced under oath and such exhibits, if any, as had been introduced, and should not consider or discuss anything not represented by evidence in the case. There is nothing in the record before us to indicate that the jury failed to follow these instructions. Therefore, the error, if any, was harmless. Rule 434, Vernon's Texas Rules of Civil Procedure; McCord v. Vilbig Construction Co., 417 S.W.2d 634, 638 (Tex.Civ.App., Dallas 1967, writ ref'd n. r.e.).

Points of error Nos. 1–14 are overruled.

By her points of error Nos. 15 and 16, appellant complains of the sustaining of a special exception to that part of her petition alleging her theory of recovery under the doctrine of *res ipsa loquitur*. Appellant first alleged that an anesthetic was administered which rendered her unconscious; that shortly after surgery was begun her heart stopped beating, which proximately resulted in her paraplegia. She then alleged the following:

"Plaintiff, VONCEIL HUNTER, alleges that the anesthetic administered to her and the operation which she underwent was done under the exclusive management and control of Defendants; that during such surgery she was completely anesthetized, helpless, and unconscious from the general anesthetic; that the operating room in which said surgery was performed was under the exclusive management and control of these Defendants; that the cause or causes of Plaintiff's paralysis and condition immediately following surgery did not exist beforehand and that the injury to Plaintiff's body causing paralysis was in a healthy area of Plaintiff's body, remote from the operative field and the site of operation; that the injuries that Plaintiff suffered during said operation and the results of such surgery do not arise in the ordinary course of such surgery if those in the exclusive management and control of such surgery, exercise the care, skill, and diligence possessed by the average qualified physician and surgeon, and Plaintiffs hereby give Defendants notice that they intend to rely upon the Doctrine of Res Ipsa Loquitur upon the trial of this cause."

These allegations were stricken when the special exception was sustained.

Several of our intermediate appellate courts have held unequivocally that the doctrine of *res ipsa loquitur* is not applicable in a medical malpractice case. Barker v. Heaney, 82 S.W.2d 417, 419 (Tex.Civ. App., San Antonio 1935, writ dism'd); and Bell v. Umstattd, 401 S.W.2d 306, 313 (Tex.Civ.App., Austin 1966, writ dism'd). In Goodnight v. Phillips, 418 S.W.2d 862, 868 (Tex.Civ.App., Texarkana 1967, writ ref'd n. r. e) and in Stinnett v. Price, 446 S.W.2d 893, 895 (Tex.Civ.App., Amarillo 1969, writ ref'd n. r. e.), it is said, "There are only very, very few instances where a pleading of *res ipsa loquitur* is applicable in medical malpractice cases." (Italics ours.) No such instance has been called to our attention.

The *res ipsa* maxim does not apply in such cases because of the general rule that "a patient has no cause of action against his doctor for malpractice, either

in diagnosis or recognized treatment, unless he proves by a doctor of the same school of practice as the defendant: (1) that the diagnosis or treatment complained of was such as to constitute negligence and (2) that it was a proximate cause of the patient's injuries." Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779, 782 (1949). To the same effect see Goodnight v. Phillips, supra, and Shockley v. Payne, 348 S. W.2d 775, 779 (Tex.Civ.App., Amarillo 1961, writ ref'd n. r. e.).

■ An exception to that rule is found in those cases in which the injuries are "obviously the result of some one's negligence," and obviously caused by use of external force applied while the patient lay unconscious, Ybarra v. Spangard, 25 Cal.2d 486, 154 P.2d 687, 690, 162 A.L.R. 1258 (1944), or "where the want of care or skill is so obvious as to be within the comprehension of a layman," Thomas v. Beckering, 391 S.W.2d 771, 775 (Tex.Civ.App., Tyler 1965, writ ref'd n. r. e.), or where the negligence "is obvious to the untrained layman, such as leaving surgical instruments or sponges in the incision, or operating on the wrong portion of the body," Henderson v. Mason, 386 S.W.2d 879, 882 (Tex.Civ.App., El Paso 1964, no writ). Appellant argues that the case falls within the exception, but her petition alleges nothing to the effect that the negligence complained of was so obvious as to be within the comprehension of the untrained layman.

■ ■ Negligence is never imputed from unsatisfactory results. Shockley v. Payne, supra; Patrol Valve Co. v. Farrell, 316 S.W.2d 92, 97 (Tex.Civ.App., Amarillo 1958, writ ref'd n. r. e.); Kaster v. Woodson, 123 S.W.2d 981 (Tex.Civ.App., Austin 1938, writ ref'd). Moreover, a physician is not a warrantor of cures, and his failure to cure is no evidence of negligence on his part. Barker v. Heaney, supra.

■ When the special exception was sustained, appellant went to trial on her al-

ternative pleading of twenty-six specific acts of negligence on the part of the defendant doctors, and twelve items of alleged negligence on the part of appellee East Dallas Hospital, Inc., and the facts were fully developed. The essential elements of the evidence are hereinabove summarized in our treatment of appellant's first fourteen points of error, and need not be repeated here. That evidence shows that the injury to appellant's spinal cord could easily have been caused by an obstruction in the flow of blood in the anterior spinal artery, which demonstrates clearly the inapplicability of the *res ipsa* doctrine. Thus, if there was error it was harmless. 40 Tex.Jur.2d, Negligence, § 148, p. 675; Rule 434, T.R.C.P. See also Annotation in 82 A.L.R.2d 1262.

Accordingly, points Nos. 15 and 16 are overruled.

Appellant's points of error Nos. 17, 18 and 19 complain of the sustaining of Dr. Mahon's motion for instructed verdict at the close of appellant's evidence. We have carefully reviewed the evidence offered to prove negligence of Dr. Mahon proximately causing appellant's injuries. Accepting this evidence as true and considering it in the light most favorable to appellant, Constant v. Howe, 436 S.W.2d 115, 116 (Tex. Sup.1968), we cannot escape the conclusion that it was legally insufficient to support the submission of issues inquiring as to negligent conduct on Dr. Mahon's part. We also hold that there was no evidence that anything he did or failed to do proximately caused appellant's injuries. See 45 Tex.Jur.2d, Physicians and Other Healers, §§ 129 and 134, pp. 299 and 309; Bowles v. Bourdon, 213 S.W.2d 713 (Tex.Civ.App., Galveston 1948, affirmed 148 Tex. 1, 219 S.W.2d 779). Appellant's points 17, 18 and 19 are therefore overruled.

■ By her points of error Nos. 20–23 appellant complains of the answer of "None" to the damage issue as being so against the great weight and preponderance of the evidence as to be manifestly

unjust and to indicate passion and prejudice on the part of the jury. We cannot reverse on account of this negative answer because in the absence of a jury finding that appellees' negligence proximately caused appellant's injuries the answer to the damage issue is immaterial. Southern Pine Lumber Co. v. Andrade, 132 Tex. 372, 124 S.W.2d 334 (1939); Gant v. St. Louis-San Francisco Ry. Co., 474 S.W.2d 516, 519 (Tex.Civ.App., Dallas 1971, no writ). Therefore, points of error Nos. 20–23 are overruled.

The judgment appealed from is affirmed.