David HENRY and Sherri Henry, Individually and on Behalf of the Estate of Tawnya Lee Ann Henry, Deceased, Appellants,

v.

Alberto FELICI, M.D. and J.W. Caldwell, M.D., Appellees.

No. 13–87–339–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1988.

Rehearing Denied Oct. 20, 1988.

Stephen Dittlinger, Clem Lyons, Southers & Lyons, San Antonio, for appellants.

Stephen P. Dietz, Neil Norquest, Keith C. Livesay, Ewers, Toothaker & Abbott, B. Buck Pettitt, Jones, Lewis & Pettitt, A.A. Munoz, II, Flores, Sanchez, Vidaurri & Munoz, McAllen, for appellees.

Before BENAVIDES, UTTER and KENNEDY, JJ.

## OPINION

BENAVIDES, Justice.

This is an appeal of a take-nothing judgment in a medical malpractice case. Appellants, David and Sherri Henry, individually and on behalf of the estate of their deceased daughter, Tawnya Lee Ann Henry, brought suit against Alberto Felici, M.D., J.W. Caldwell, M.D., Tommy Yee, M.D., Sarah Taylor, M.D., and McAllen Methodist Hospital seeking to recover damages for the personal injuries and death of Tawnya Lee Ann Henry.

Prior to trial, appellants entered into a settlement agreement with the hospital for $250,000 and, thereafter, dismissed it from the case. The doctors then filed third party actions against the hospital for contribution and/or indemnity. During trial, appellants dismissed Dr. Yee with prejudice and, after the trial, dismissed Dr. Taylor from the appeal. Doctors Felici and Caldwell are the only parties (appellees) remaining in this appeal.

The trial was before a jury. The jury found, in response to special issues, that doctors Felici and Caldwell were negligent, but that their negligence was not a proximate cause of Tawnya's death. In contrast, the jury found the hospital negligent and that its negligence was a proximate cause of Tawnya's death. The jury also found $50,000 in damages for David and Sherri Henry's past mental pain and anguish but found no damages with respect to (1) future mental anguish and pain and suffering, (2) past and future loss of love, comfort, companionship, and society, and (3) Tawnya's conscious pain and mental anguish prior to death.

In accordance with the jury's findings, the trial court entered a take-nothing judgment against appellants. After their motion for new trial was overruled, appellants perfected this appeal.

Appellants present five points of error for review. Initially, appellants contend that various jury findings were against the great weight and preponderance of the evidence. Secondly, appellants argue that the trial court committed error when it allowed the appellees to introduce evidence concerning the settlement agreement between appellants and the hospital. After carefully reviewing the record, we affirm the judgment of the trial court.

The record reveals that on February 19, 1983, the day before her third birthday, Tawnya Henry fell from a kitchen cabinet onto a tile floor, striking the left side of her head. The accident occurred at approximately 9:00 a.m. on a Saturday. According to the appellants, within an hour Tawnya began vomiting, became listless, and her eyes began to roll back into her head. At approximately 10:00 a.m., appellants drove Tawnya to the emergency room at Mission Hospital in Mission, Texas. When they arrived, Dr. Minto ordered X-rays which revealed Tawnya had a fractured skull. Minto then called the child's pediatrician, Dr. Caldwell, and arranged for her transfer to McAllen Methodist Hospital. Tawnya arrived at McAllen Methodist (hereinafter "the hospital") at approximately 11:20 a.m., and was admitted directly to the pediatrics floor. Dr. Sarah Taylor, a first year resident, was examining the child when Caldwell arrived at the hospital. After both doctors concluded their examination, Caldwell, suspecting the child had possibly sustained a intercranial hemorrhage, ordered a CT scan of the brain and a neurosurgical consult from Dr. Luiz.

Soon thereafter, Caldwell learned that the hospitals only CT scanner was inoperable. Caldwell testified that at this point he was not concerned because he knew Dr. Luiz had a CT scan in his office. At approximately 12:15, he learned that Dr. Luiz, the only neurosurgeon in McAllen, was out of town. Caldwell, then called Dr. Tommy Yee, a neurologist, and asked him to examine the child. Since it was Caldwell's weekend off, he asked his partner, Dr. Alberto Felici, to handle the case. At this point, the evidence becomes controverted. According to Caldwell, he informed Felici and Yee that this was an emergency situation. However, both Felici and Yee testified that they were not made aware of the severity of the child's condition.

Felici testified that at 12:45 when he arrived at the hospital, Tawnya's condition was more severe than he had expected; therefore, he moved Tawnya to the inten-

sive care unit. Felici then called Yee's answering service, because he had not yet examined the child.

According to Yee, he was at home having lunch when he received the phone call from Caldwell. Yee testified that he did not recall Caldwell telling him that Tawnya had serious neurological symptoms. He finished his lunch and treated another seriously ill patient before he examined Tawnya. He did not examine Tawnya until approximately 1:45 p.m. and by that time her condition had drastically deteriorated.

Yee suspected that Tawnya was hemorrhaging and needed an immediate neurosurgical evaluation and CT scan. If his suspicions were correct, in order to relieve the effects of the hemorrhage, Tawnya would require surgery by a neurosurgeon. A neurologist, as distinguished from a neurosurgeon, is a nonsurgical specialist. Yee contacted Dr. Guy Bragg in Harlingen, who was the closest neurosurgeon. Dr. Bragg told Yee that he would accept the child and to transfer her immediately. At trial, Yee testified that he left the hospital after he instructed Felici to order the transfer.

At approximately 2:00 p.m., Felici ordered the transfer with the stipulation that a nurse capable of intubating a child accompany Tawnya on the transfer.[1] Felici also left the hospital after instructing Taylor to stay with the child and to call him if any problems arose.

At approximately 2:25, Taylor was informed that a hospital nurse would not be available to accompany the transfer until 3:00 p.m. By this time, Tawnya had taken a turn for the worse. Taylor discovered that Tawnya's left pupil had expanded and did not react to light, which indicated that the blood inside of her head was causing enough pressure on the brain to cause the eye to swell and to cause damage to nerve tissue.

According to Taylor, she immediately called Felici and told him that a nurse

---

1. The record reveals that this was required in case Tawnya stopped breathing on the way to Harlingen.

would not be available until 3:00, and that Tawnya's left eye had "blown." Felici testified that he recalled Taylor notifying him of Tawnya's change in condition, but did not remember receiving information about the unavailability of a nurse.

Shortly thereafter, Taylor obtained a box of instruments and medication needed for the transfer; however, according to Taylor, a nurse from the hospital's neonatal intensive care unit took the box away from her. At approximately 2:50 p.m., the transfer nurse arrived, but she did not have the capability to intubate a patient. Taylor then immediately called Felici.

Felici told Taylor to have the equipment and ambulance ready, he was on his way to the hospital and was going to go on the transfer himself. Taylor once again retrieved the box of instruments needed for the transfer, but the nurse again took it away from her. When Felici arrived at the hospital, he retrieved the instruments needed from another section of the hospital. At approximately 3:35 p.m., Felici was ready to transfer the child, but there was no ambulance. Mrs. Henry testified that by this time she had called an ambulance herself from a phone in the hospital's waiting room. An ambulance arrived at approximately 4:00 p.m.

Tawnya arrived at Valley Baptist Hospital in Harlingen at approximately 4:45 p.m. Dr. Bragg performed a partial CT scan which revealed Tawnya had a massive head bleed. Bragg immediately performed surgery; however, the lower part of her brain was so severely damaged that it failed. Tawnya died on February 23, 1983.

## JURY FINDINGS

By four points of error, appellants contend that the jury's failure to find the negligence of Felici and Caldwell was a proximate cause of death, and their failure to award damages was against the great weight and preponderance of the evidence.

In determining whether a finding is against the great weight and preponderance of the evidence, we will follow the guidelines reiterated by the *Texas Su-*

*preme Court in Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986).

■ Initially, we will address appellants' fourth and fifth points of error, which challenge the failure of the jury to find Caldwell and Felici's negligence proximately caused Tawnya's death.

All the experts who testified at trial agreed that if Tawnya would have had sooner access to a hospital having a CT scan and neurosurgeon she could have survived. Furthermore, the evidence established that it normally takes twenty to thirty minutes to effectuate a transfer.

At trial, both doctors Bragg and Yee testified that had Tawnya been transferred within twenty to thirty minutes after it was ordered, (2:20 or 2:30) she, in all probability, would have survived. The only medical expert who testified on behalf of the appellants was Dr. Marx, a specialist in emergency medicine. He testified that since he was not a neurosurgeon, he could not determine her chances of survival at any given point in time. Therefore, there was uncontroverted evidence from which the jury could conclude that the proximate cause of death was the delay that occurred sometime after the transfer was ordered.

In reviewing the record, we find there was substantial evidence from which the jury could conclude that the delay which caused the death of the child was due to the hospital's negligence, not the negligence of Caldwell or Felici.

The last service rendered by Caldwell on behalf of Tawnya occurred at approximately 12:30, when he contacted Yee and arranged for Felici to become her primary physician. A jury, therefore, could find Caldwell's negligence in failing to order Tawnya's transfer between 11:30 and 12:30, was not a proximate cause of her death. However, Tawnya was under Felici's care from 12:30 to approximately 4:45 p.m.

Appellants' expert testified that his primary complaint against Felici was that he should have immediately transferred the child. He also complained that once the transfer was ordered, Felici should have

assured the transfer was effectuated as soon as possible, and that Felici had left Taylor "with an enormous responsibility."

The special issue inquiring to Dr. Felici's negligence was disjunctive and provided:

## SPECIAL ISSUE NO. 3

On the occasion in question, was Dr. Felici negligent?

In answering this question you shall consider only whether Dr. Felici was negligent in failing to timely transfer Tawnya Lee Ann Henry to a hospital having a CT Scan and Neurosurgeon, or in leaving Tawnya Lee Ann Henry under the care of an inexperienced physician before the transfer had taken place?

The jury's affirmative answer may have been based on a finding that Felici failed to timely transfer Tawnya, or that he negligently left Tawnya under Dr. Taylor's care.

Since, it was uncontroverted that if Tawnya had been transferred as ordered by Felici, she in all probability would have survived, we will consider the evidence concerning the events which occurred after the transfer was ordered.

Maria Rodriguez, the registered nurse in the hospital's intensive care unit, testified that after a doctor orders her to transfer a patient, it becomes her responsibility to effectuate the order. She testified that when Felici ordered Tawnya's transfer, she understood that it was an emergency situation, but that the standard procedure at that time was for her to delegate the transfer to the unit clerk. Josefina Garcia, a vocational nurse at McAllen Methodist, testified that the unit clerk calls an ambulance, and the house supervisor finds the most qualified personnel to do the transport. Garcia further testified that she received a call from the house supervisor at 2:25 or 2:35 wanting a nurse to transport Tawnya to Harlingen. Since it was a Saturday, none of the other nurses wanted to go, so she volunteered to go on the transport. According to Garcia, the house supervisor did not tell her it was an emergency situation; therefore, she informed the supervisor she would not be available to transport the child until 3:15.

Bragg, Yee, Caldwell, Taylor, and Felici all testified that after the doctor orders a transfer, it becomes the responsibility of the hospital's staff to effectuate the transfer. These doctors further testified that it was standard medical practice for a doctor to assume his orders would be carried out, unless he was informed otherwise. Likewise, appellants' expert testified that if the hospital personnel did not tell the doctor there was trouble carrying out his order, the doctor was without fault. He also testified, however, that if the doctor was aware of the problem, then he should have investigated and taken the proper action. As pointed out earlier, the evidence concerning whether Felici had been informed of the problems prior to 3:00 is controverted. It is, however, the province of the jury to weigh the evidence and determine the credibility of the witnesses.

Felici testified that as soon as he was made aware of the problems, he immediately went to the hospital, gathered the instruments needed, and went on the transport himself. Likewise, nurse Rodriguez testified that she did not inform Felici of the problems in carrying out his orders until he arrived at the hospital at 3:00 p.m. Therefore, a jury could find that Felici was not informed of the difficulties until 3:00, and thereafter did all that he could do to effectuate the transfer.

Furthermore, Caldwell, Felici, Taylor, and Bragg all testified that there was an unusual and inappropriate delay on the part of the hospital. Yee testified that when he came back to the hospital at 4:00 p.m., he was shocked to see that Tawnya had not been transferred. He was told the delay was due to difficulty in finding a nurse and an ambulance. Likewise, Mrs. Henry testified that she was told the delay was due to problems in obtaining equipment and an ambulance. Even appellants' expert testified that it appeared the hospital was having problems providing qualified personnel to effectuate the transfer.

In light of the testimony that Tawnya in all probability would have survived if she had been transferred within a reasonable

time after it was ordered, and the overwhelming evidence that the reason the child was not transferred within a reasonable time was due to the hospital's failure to provide equipment, medication, qualified personnel, and an ambulance, we find there was sufficient evidence from which a jury could find the proximate cause of death was due to the hospital's negligence and not the negligence of Doctors Felici and Caldwell.

If the jury's negligence finding as to Felici was based on leaving Tawnya under Dr. Taylor's care and not the failure to timely transfer, we also determine that the failure to find proximate cause is not against the great weight and preponderance of the evidence (we note additionally that the jury failed to find Dr. Taylor negligent).

After reviewing and considering all the evidence, we determine that the jury's failure to find the proximate cause issues against Caldwell and Felici are not so against the great weight and preponderance as to be manifestly unjust. Accordingly, we overrule appellants' fourth and fifth points of error.

Appellants next challenge the jury's failure to award damages for: (1) appellants' future mental anguish and pain and suffering; (2) appellants' past and future loss of love, comfort, and companionship; and (3) Tawnya's estate for conscious pain and mental anguish she suffered prior to her death.

It is well established that, in a medical malpractice case, where the jury finds that a defendant's negligence was not the proximate cause of a plaintiff's injuries, the jury's answers to damage issues are immaterial. *See, e.g., Owens v. Rogers,* 446 S.W. 2d 865, 866 (Tex.1969); *Sendejar v. V. Alice Physicians & Surgeons Hospital, Inc.,* 555 S.W.2d 879, 886 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.); *Hunter v. Robinson,* 488 S.W.2d 555, 561 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e). We overrule appellants' first and second points of error.

### THE SETTLEMENT AGREEMENT

By their third point of error, appellants contend that the trial court erred in admitting evidence of the settlement agreement between the appellants and the hospital.

Prior to trial, the court granted appellants' motion in limine regarding their settlement with the hospital. During *voir dire,* counsel for the appellants told the jury panel that:

the hospital is not a party to this suit. . . . The defendants, the doctors in this case have said "the care that we gave the little girl was good. That it was not carelessly done and that the negligence, if any, was the fault of the hospital." And that is [sic] where the lawsuit lies.

Shortly thereafter, counsel for the appellants asked Ms. Vega, a potential juror who was an employee of the hospital, if she understood that her "hospital's not a party to the suit, but the doctors are alleging that the hospital is negligent."

Likewise during the *voir dire,* counsel for the hospital stated:

and, one thing that is very important that I'll remind you again later on of, is the fact that the plaintiffs, Mr. & Mrs. Henry and their lawyers, did not bring the hospital into this case. It was Dr. Sarah Taylor that initially brought the hospital into the case. So keep that in mind.

After the jury was chosen and opening remarks were made, counsel for the appellees made a motion to the court, requesting that the settlement agreement be admitted into evidence. Counsel for the appellees argued that the statements made by counsel for the appellants and the hospital during voir dire opened the door to the settlement's agreement. After two lengthy hearings held outside the presence of the jury, the trial court ruled that the *existence* of the settlement was admissible, but the terms of the agreement were not to be elicited.

After the court's ruling, counsel for the appellee asked Mrs. Henry the following questions:

[Q:] Now have you sued the hospital for your daughter's injuries?

[A:] *We came to a settlement, yes.*

[Q:] And you've settled your case?

[A:] Yes. (Emphasis added).

Likewise, Mr. Henry responded affirmatively when asked if he had settled his case with the hospital. The record reflects that this was the only testimony elicited concerning the settlement.

On appeal, appellants contend that the statements made during *voir dire* did not open the door or invite the admission of the settlement.[2] The appellees, however, argue that these statements, tend to mislead the jury, allowing them to infer that the appellants never considered the hospital blameworthy.

The traditional rule in Texas is that settlement agreements between the plaintiff and a co-defendant should be excluded from the jury. *McGuire v. Commercial Union Insurance Co.*, 431 S.W.2d 347 (Tex.1968); Tex.R.Evid. 408. A recognized exception to the rule exists when a "Mary Carter" agreement has been entered into. *General Motors v. Simmons*, 558 S.W.2d 855, 859 (Tex.1977). Likewise, a defendant is entitled to bring before the jury a settlement agreement, where the plaintiff opens the door to or volunteers its existence. *McAllen Kentucky Fried Chicken No. 1 v. Leal, 627 S.W.2d 480, 484 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.).*

In the instant case, the settlement was not a Mary Carter agreement. The statements made during *voir dire*, to the extent they misled the jury, may have opened the door for the introduction of evidence establishing that the appellants at one time did sue the hospital; however, we are unwilling to hold that such comments invited the introduction of evidence concerning the ex-istence of the settlement agreement. We, therefore, find the trial court committed error in admitting the evidence.

Appellees contend that even if the statements made during voir dire did not open the door, appellants nonetheless invited the error when Mrs. Henry *volunteered* the fact that she had settled her case with the hospital in response to a question asking if she had ever sued the hospital.

It is well established that a party has no right to complain of error which he has invited. *Texas General Indemnity Co. v. Robinson*, 340 S.W.2d 74, 76 (Tex.Civ.App. —El Paso 1960, writ ref'd n.r.e.). However, the doctrine of invited error does not apply where there is nothing in the record to indicate that the appellant was responsible for the error committed by the trial court, or where it does not appear the court was led or induced by the appellant to commit the error.

We find the error in admitting evidence of a prior settlement was not invited or waived by appellant's response to questioning where the court had ruled the evidence was admissible and had indicated to appellant's counsel what her testimony should be.[3] *See McCardell v. Hartford Accidental and Indemnity Co.*, 360 S.W.2d 831, 835 (Tex.Civ.App.—Beaumont 1962), *affirmed*, 369 S.W.2d 331 (Tex.1963).

While we find the trial court committed error, the erroneous admission of a settlement is not *per se* reversible error. *See Birchfield v. Texarkana Memorial Hospital*, 747 S.W.2d 361, 365 (Tex.1987); *Missouri Pacific Railroad Corp. v. Hueb-*

---

**2.** Appellees contend appellants failed to preserve error, since they did not object to this testimony. We disagree. Tex.R.App.P. 52(b) provides that "when the court hears objections to offered evidence out of the presence of the jury and rules that such evidence be admitted, such objections shall be deemed to apply to such evidence when it is admitted before the jury without the necessity of repeating those objections."

In the instant case there were two lengthy hearings held outside the presence of the jury in which the admissibility of the settlement agreement was thoroughly argued and objections made thereto. Therefore, appellants did not waive error by failing to object to the questions.

**3.** After the trial court ruled that the settlement was admissible, counsel for appellants asked the court:

May we have some clear guidelines? I have to advise my clients how to respond.... Do I understand that we're going to have just one question, "Have you settled the case, your cause of action against the hospital?"

The court responded that one or two of these types of questions would be sufficient and that there would be no testimony concerning the terms of the agreement.

*ner,* 704 S.W.2d 353, 355 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.).

Tex.R.App.P. 81(b)(1) provides that no judgment should be reversed unless the appellate court believes the error complained of amounted to such a denial of rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment.

The Texas Supreme Court in *Birchfield v. Texarkana Memorial Hospital,* 747 S.W.2d at 365, recently held that although references to settlement of another case are not normally admissible, passing remarks made by an expert witness that the defendant had settled with other plaintiffs in similar cases, was harmless error.

Under the particular circumstances of this case, we cannot say the error was reasonably calculated to cause and probably did cause the rendition of an improper verdict. The record reveals that the evidence presented concerning the settlement was minimal and confined to a single statement that a settlement had been made. The jury was never informed of the terms of the agreement, nor were they made aware of the amount of the settlement. Furthermore, the case was well-developed, the testimony was voluminous, and there was overwhelming evidence which supported the jury's finding that it was the hospital's negligence which proximately caused Tawnya's death. Indeed appellants' attorney argued to the jury in his opening argument at the close of the evidence that the hospital was negligent and liable for the tragedy that occurred.

Under the facts and circumstances of this case, we find that any error in admitting the evidence that appellants had settled with the hospital was harmless. We overrule appellants' third point of error.

The judgment of the trial court is AFFIRMED.