William J. SHOCKLEY et ux., Appellants,

v.

Clifford E. PAYNE, Appellee.

No. 7069.

Court of Civil Appeals of Texas.

Amarillo.

July 3, 1961.

Rehearing Denied Sept. 5, 1961.

Calloway Huffaker and Harold Green, Tahoka, for appellants.

Crenshaw, Dupree & Milam, Lubbock, for appellee.

CHAPMAN, Justice.

This is a malpractice case tried in Lubbock County against Dr. Clifford E. Payne, a medical doctor of Lubbock, Texas, appellee herein. Damages were sought by William J. Shockley and wife, Evelyn W. Shockley, for alleged negligence arising out of surgical procedure performed upon Mrs. Shockley, following which a small hole was discovered in her left ureter through which urine leaked out into the abdominal cavity and through the incision made to relieve bowel blockage.

On January 30, 1958, appellee performed surgery upon Mrs. Shockley for removal of an ovary. In 1945 he had removed her other ovary and tube and in 1950 when she was only 24 years of age had removed her uterus. The testimony shows that both in the original surgery of 1945 and in that of 1950 there were adhesions present in appellant's abdomen and that she had suffered

inflammatory conditions therein, side aches, backaches, headaches, nausea and other ailments prior to the surgery for removal of her second ovary on January 30, 1958. Following the surgical procedure last named Mrs. Shockley developed adhesions again that led to the bowel blockage which required surgery on February 23, 1958. The surgical procedure to relieve the bowel blockage was an emergency operation performed 24 days after the previous operation and without which, Dr. Payne testified, she would have died. The only medical testimony in the record is that produced by extensive cross examination of appellee.

After appellants had concluded their testimony the court instructed a verdict in favor of Dr. Payne. It is from the judgment based thereon that appellants have perfected their appeal.

All emphasis hereafter made is that of ours unless otherwise designated.

This case was a special setting and all parties announced ready on September 12, 1960. A subpoena had been previously issued by appellants for Dr. Krueger, a Lubbock physician. The record shows that on the day the trial started, Dr. Krueger's doctor had certified that it was inadvisable for the doctor to be subjected to any courtroom procedure at that time. The trial developed the fact that Dr. Krueger had a heart condition and had been advised to avoid emotional upsets, fatigue, and strenuous activities. His letter dated February 13 had accompanied the certificate of his doctor asking that he be excused as a witness.

The record reveals that Mrs. Shockley had been examined by Dr. Douglas Barry, a urologist of San Angelo for the purpose of the doctor making a witness for her, and that it was understood by appellants' counsel that he would be available as a witness. He did not live within the mileage area that made him subject to subpoena and failed to appear as a witness.

Dr. Roy Riddle, Jr. of Lubbock, the urologist who performed the corrective surgery to close the hole in Mrs. Shockley's ureter, the condition upon which the malpractice was bottomed, was present during the trial under subpoena of appellants, available at all times as a witness, but never used.

After more than two days of testimony, most of which was examination of Dr. Payne by counsel for appellants, it developed that Dr. Barry and Dr. Krueger were not going to be available as witnesses. Motion for continuance was then made by appellants or for delay until depositions could be taken of the mentioned doctors, and application was made for attachment for Dr. Krueger. After studying the requests and appellee's reply thereto motions for continuance and postponement were denied and the court declined to issue the attachment for Dr. Krueger. These refusals are before us for appellate review.

■ Appellants pleaded they were entitled to the application of the res ipsa loquitur doctrine against Dr. Payne. Exceptions were levelled against such pleading and sustained by the trial court. Appellants did not file a motion for new trial. By counterpoints appellee has asserted that the res ipsa loquitur question and the motions just described are not subject to appellate review because they were not raised in the court below by motion for new trial. These counterpoints present interesting and intriguing questions but after a thorough study of the relationship between Rules 324 and 325, Vernon's Ann.Tex.Rules of Civil Procedure, as applied to the necessity for filing motions for new trial where an instructed verdict is given, this writer has decided they are not intriguing enough to cause us to write upon the questions presented here upon the necessity for filing a motion for new trial in order to be entitled to appellate review for alleged error of the court in sustaining the exceptions just mentioned and denying the motions made after two and one-half days of trial. Clearly Rule 324 must be construed in harmony with Rule 325 because "nothing in Rule 324 shall render a motion for new trial unnec-

essary in" cases where complaint is of action on motions for continuance or change of venue, or other preliminary motions, "nor in instances of newly discovered evidence, misconduct, fraud or the like." ·

We have studied very thoroughly the Supreme Court's Per Curiam opinion in Wagner v. Foster, Tex.Sup., 341 S.W.2d 887; their opinion by Justice Griffin in City of Corpus Christi v. Gregg, 155 Tex. 537, 289 S.W.2d 746 and their opinion by former Chief Justice Hickman in Smock v. Fischel, 146 Tex. 397, 207 S.W.2d 891. We have also read every Court of Civil Appeals case we could find on the subject and studied Sec. 18.04 of Vol. 4, New Trials, in McDonald's Civil Practice. The only conclusion this writer has come to is that the law is in a state of confusion in interpreting the two mentioned rules as they apply to each other upon the question of when a motion for new trial is necessary in order to entitle a litigant to appellate review. As a matter of fact Rule 325 is not itself clear. For example, it says the rulings of the court shall be considered as acquiesced in unless complained of in a motion for new trial in cases of motions for continuance, or *other preliminary motions* made and filed in the *progress of the cause*. What is a "preliminary motion"? What does "other preliminary motions" include? How may the term "preliminary motions" be reconciled with the term "made and filed in the *progress of the cause"?* Is "progress of the cause" after issue has been joined on the pleadings, after the jury has been selected or after issue has been joined on the evidence? These are just some of the unanswered problems appellants' counterpoints present.

We believe the instant case may be legally and properly disposed of without writing upon the counterpoints here under discussion. If appellee is correct in his contention it would require us to write only upon the question of whether the court correctly instructed a verdict for appellee. We prefer to write upon all of the seven points raised by appellants rather than attempt to reconcile Rules 324 and 325 from the facts of this case. A thorough study of the case has caused us to conclude that the court properly instructed a verdict. In the event we should be in error we hope the record will be in shape in the Supreme Court that they will enlighten us on the procedural questions raised.

■ By another counterpoint, unnecessary to discuss, appellee has questioned the correctness of the trial court's admission into evidence, over timely objections, of a portion of the Taylor Hospital record in the form of an anesthesia record purportedly dated April 9, 1959. The record shows the instrument was identified but it was never introduced and is not before us. Counsel for appellee must have assumed the instrument was introduced into evidence because it was referred to as a part of the record throughout appellants' brief. Obviously counsel did not carefully check the statement of facts because it was never introduced, is not before us, and we have no authority to consider it in disposing of the case. Therefore, we now turn to a consideration of appellants' points, the first two of which contend for the application of the res ipsa loquitur doctrine.

■ We do not believe the doctrine is applicable under the facts of this case. The San Antonio Court of Civil Appeals has said in Barker v. Heaney et al., 82 S.W. 2d 417, 419 (wr. dis.); "The ruling of res ipsa loquitur does not apply in a malpractice case." That case has been cited, with approval by our Supreme Court in Bowles et al. v. Bourdon et al., 219 S.W.2d 779.

In Kaster v. Woodson, Tex.Civ.App., 123 S.W.2d 981, 982 (wr. ref.), the court said:

"[2,3] In the case of Floyd v. Michie [Tex.Civ.App.], 11 S.W.2d 657, this court held as follows [page 658]: 'The law entertains in favor of a physician the presumption that he has discharged his full duty, and to defeat this presumption the law exacts affirmative proof of breach of duty coupled with affirmative proof that

such breach of duty resulted in injury. Negligence is never imputed from results, nor is any inference thereof indulged in against a physician. The plaintiffs' evidence in this case failing to meet the law's requirements, the court properly directed a verdict for the defendants Michie and Griffin. * * * To warrant the finding of civil malpractice there must be expert medical testimony to establish it and to establish the additional fact that death resulted from such malpractice. There being no expert medical testimony establishing such issues, the court properly instructed a verdict for the defendants.' "

Our Supreme Court in Bowles v. Bourdon, supra [319 S.W.2d 782], said:

"[1] It is definitely settled with us that a patient has no cause of action against his doctor for malpractice, either in diagnosis or recognized treatment, unless he proves by a doctor of the same school of practice as the defendant: (1) that the diagnosis or treatment complained of was such as to constitute negligence and (2) that it was a proximate cause of the patient's injuries. Kaster v. Woodson, Tex.Civ.App., 123 S.W.2d 981 (er. ref.); Floyd v. Michie, Tex.Civ.App., 11 S.W.2d 657; Kootsey v. Lewis, Tex.Civ.App., 126 S.W.2d 512; Barker v. Heaney et al., Tex.Civ.App., 82 S. W.2d 417 (er. dism.); Phillips v. Wright, Tex.Civ.App., 81 S.W.2d 129 (er. dism.); Urrutia v. Patino, Tex. Civ.App., 10 S.W.2d 582 (er. dism.)."

One of the latest expressions of the proof required to recover from a surgeon is found in Amerine v. Hunter et al., Tex. Civ.App., 335 S.W.2d 643 (N.R.E.), 647. There the court quoted from Ewing v. Goode, C.C., 78 F. 442 as follows:

" 'When a case concerns the highly specialized art of treating (disease), with respect to which a layman can have no knowledge at all, the court and jury must be dependent on expert evidence. There can be no other guide, and, where want of skill or attention is not thus shown by expert evidence applied to the facts, there is no evidence of it proper to be submitted to the jury. Again, when the burden of proof is on the plaintiff to show that the injury was negligently caused by defendant, it is not enough to show the injury, together with the expert opinion that it might have occurred from negligence and many other causes. Such evidence has no tendency to show that negligence did cause the injury.' "

We believe the Supreme Court has altered the holding to the effect that a patient has no cause of action against his doctor for malpractice unless he proves by a doctor of the same school, etc. In Porter v. Puryear, 153 Tex. 82, 262 S.W.2d 933 they held a medical doctor could testify against an osteopath and make a case where the question involved was the administration of spinal anesthetic, the theory apparently being that an M.D. has at least equal training to an osteopath upon such procedure.

For medical evidence we have only the testimony elicited from Dr. Payne by opposing counsel. They tried from many approaches to get him to admit that if the ureter was cut, in an operation such as the one under consideration, that it would have been negligence. He not only vehemently denied cutting it but denied in effect that under the conditions such as he was working in the procedure to remove bowel blockage that it would constitute negligence.

Appellants rely upon Martin v. Eschelman, Tex.Civ.App., 33 S.W.2d 827. That case has little analogy to our own. The defendant there admitted if he had burned the plaintiff by X-ray treatment it would have been negligence, thus removing the burden of showing negligence and proximate cause.

Appellee testified the bowel blockage surgical procedure was not an ordinary operation. The record shows Mrs. Shockley had developed abdominal cramping and diarrhea, with severe or marked distention before the operation and that the condition led to inflammation of the bowel walls, which were thin and discolored. The ureter was in the area where it was necessary to work in dissecting the adhesions. Though he denied cutting or injuring the ureter, he testified that even in using all the skill possible under the circumstances a ureter could be cut inadvertently.

There is no testimony from any source that appellee cut the ureter. Mrs. Shockley had early drainage from fluid in the abdominal cavity following the operation caused by the distended bowel, and there is no probative evidence as to when the urinary drainage started.

Appellee testified he saw no hole in the ureter when he performed the bowel blockage operation, he saw no urine in the peritoneal cavity, and he did not know when the fistula in the ureter occurred. He also said he checked the abdomen and the area of the ureter when he was closing the abdomen, though he did not pick up the ureter and examine it.

■ Appellants contend the res ipsa loquitur doctrine is applicable because Mrs. Shockley was unconscious at the time the injury occurred and the injury was to a part of the body upon which no surgery was being performed. This contention falls from the lack of testimony, because there is no probative evidence that the small pin-point hole in the ureter appeared at the time she was under anesthesia or that he cut it, nicked it, or caused it by the use of clamps or other surgical tools. There is just no evidence here that holes do not appear in ureters following surgery for a condition shown by this record and upon one whose physical disabilities, prior to and at the time of the surgery, were such as Mrs. Shockley's is shown by this record to have been. These are matters to be

proved by medical testimony and it is absent in this case. In Dees v. Pace, 118 Cal. App.2d 284, 257 P.2d 756, 759, the District Court of Appeals of California quoted with approval from another authority [Milias v. Wheeler Hospital, 109 Cal.App.2d 759, 241 P.2d 684], as follows:

" ' * * * one of the basic facts that the plaintiff must prove before the doctrine [res ipsa loquitur] is applicable is that the occurrence is one that ordinarily does not happen unless there was negligence.' "

Appellants failed in this proof and their points on the question are overruled.

■ Appellants' point 3 concerns the refusal of the court to permit testimony developed out of the presence of the jury in making a bill of exception concerning whether or not a ureter is ordinarily cut during an operation. The trial court took the position that the evidence violated his rulings upon res ipsa loquitur. Whether it did or not we believe there is not any reversible error in refusing the testimony because there is not any probative evidence that the hole was cut by appellee during the bowel blockage operation and because the only proper medical testimony in the record was that a hole could develop in a ureter during an operation such as the one under consideration. We believe the point is without merit.

We pass now to the procedural questions before discussing the question of alleged error for instructing a verdict in the case. The appellants admitted in the record it was within the discretion of the court as to whether he granted a motion for continuance, and postponement to take depositions, and issued an attachment for Dr. Krueger. Therefore we must decide if the court abused its discretion in refusing such requests.

■ The record shows an announcement without reservation as to whether Drs. Barry and Krueger would be present. The

case had been on file from February to September and no effort whatever made to secure the deposition of either doctor despite the common knowledge by attorneys of the difficulty in securing medical testimony in civil courtroom procedure because of the exceptional demands on M. D.'s time by their patients.

The case was in its third day of trial. Dr. Payne had been under lengthy and vigorous cross examination by able and experienced trial lawyers obviously determined, as they had the perfect right to do if they were able, to reveal him to the jury as an incapable surgeon and as being guilty of gross negligence in the operation and treatment of a lady patient, thus placing his reputation in jeopardy. To continue the case and try it before another jury and explain the case to another jury panel would have doubly advertized him adversely in the county where he practices. The trial court found in his order that a continuance or postponement would subject him to inconvenience and further damage his reputation. We would be much more inclined to look favorably upon the contention of an abuse of discretion were it not for the fact that Dr. Riddle, the urologist who did the corrective surgery, was available at all times as a witness under subpoena by appellants and never used. He was in the best position of any of the doctors except Dr. Payne to testify to the necessary facts required by professional medical testimony in order to make a case for the jury. The fact that counsel for appellants did not use him certainly indicates to us his testimony would not have helped their cause, and in view of their lack of diligence in taking depositions we cannot say from the record that the court abused its discretion in refusing postponement or continuance. Cameron County Water Improvement District No. I v. Cameron County Water Improvement District No. 15 et al., Tex.Civ.App., 134 S.W.2d 491; Wood et al. v. Fulton Property Co., Tex.Civ.App., 92 S.W.2d 549.

Dr. Krueger has for many years been a famous and well-known surgeon to the people of Lubbock County and that area. The certificate of his doctor shows he had a heart condition which made it inadvisable that he be subjected to courtroom procedure. It is suggested by appellee's brief and unchallenged by any reply brief that counsel for appellants knew of Dr. Krueger's inability to appear and testify and that they had an appointment with him in the morning prior to the commencement of the actual trial which started that afternoon and that they either failed to determine whether he would appear as a witness or were not diligent in determining that question. The record shows he was not present at the morning docket call nor at 1:30 when the case started, and the certificate of Dr. Hull shows to have been previously made.

Rule 186, V.A.T.R., indicates there is not sufficient diligence shown for failure to take the deposition of a witness within the county where suit is pending if the witness because of sickness or infirmity is unable to attend court. Additionally, no fee was tendered for the witness until motion for attachment. Where the record is considered as a whole, we cannot say the court abused its discretion in denying the three motions just discussed. This leaves only the question as to whether the court committed reversible error in instructing the verdict for appellee.

The following specific acts of negligence were alleged:

"1. In cutting, severing, tearing or damaging Evelyn W. Shockley's left ureter during the operation;

"2. Failure to assertain that said ureter had been cut, torn or damaged during said operation;

"3. Failure to properly repair the ureter during the operation;

"4. Failure to use reasonable skill, care and diligence to correctly diagnose

the condition of her ureter after the completion of said operation;

"5. Treating her for conditions other than those caused by the injury to the ureter when, through proper diagnosis, the defendant either knew or should have known that the condition of her ureter was the cause of her ailments."

As we have previously suggested there is no admissible proof of probative force that appellee cut, severed, tore or damaged the ureter. Allegation No. 2 presupposes appellee had cut, severed, torn or damaged the ureter; an assertion the proof does not justify.

Allegation No. 3 charges failure to properly repair the ureter during the operation. As heretofore stated, Dr. Payne testified there was no urine in the abdomen when he closed the incision but that there was peritoneal drainage. He also testified he examined the area of the ureter and saw no damage, though he did not pick up the organ and examine it. Again failure to establish allegation no. 1 makes 3 meaningless.

Under allegation 4 [failure to properly diagnose the condition of the ureter after the operation] there would be no cause of action unless there was medical proof that improper treatment followed, since both negligence and proximate cause must be established. Dr. Payne testified that because of Mrs. Shockley's physical condition he would not have changed her treatment if he had known the discharge was urine. That is the only medical testimony. Under the authority of Bowles v. Bourdon, such testimony was not sufficient to establish a cause of action. The alleged negligent diagnosis would not have been the proximate cause of her injuries later suffered. See also Christian v. Galutia, Tex.Civ.App., 236 S.W.2d 177 (N.R.E.); Nicodeme v. Bailey, Tex.Civ.App., 243 S. W.2d 397 (N.R.E.); Huttner v. MacKay,

48. Wash.2d 378, 293 P.2d 766; McBride v. Roy, 177 Okl. 233, 58 P.2d 886.

Not being skilled in the medical arts it is not possible for us to say from the record that appellee was negligent in the operative procedure or for us to say what caused the fistula in the ureter. We necessarily are bound by what Dr. Payne, the only medical witness, testified to in that respect. He did a very effective job of absolving himself. From the record before us, we are bound by the exculpatory statements.

Accordingly, we hold the trial court correctly instructed a verdict, and the judgment of that court is affirmed.