Donald Burton LOUIS et ux., Appellants,

v.

Dr. Hugh PARCHMAN, Appellee.

No. 17373.

Court of Civil Appeals of Texas, Fort Worth.

March 23, 1973.

Rehearing Denied April 20, 1973.

Baker, Foreman & Boudreaux, and Joe N. Boudreaux, Dallas, for appellants.

Cantey, Hanger, Gooch, Cravens & Munn, and William B. David, Estil Vance, Jr., and Richard L. Griffith, Fort Worth, for appellee.

## OPINION

LANGDON, Justice.

This is a damage suit for personal injuries brought by Donald Burton Louis and wife, Marjorie A. Louis, against appellee, Dr. Hugh Parchman, a practicing physician in Fort Worth, Texas, for personal injuries in the form of a common peroneal palsy (foot-drop) of her right leg.

On June 6, 1966, plaintiff, Marjorie A. Louis, a white female 24 years of age, underwent an operation for hysterectomy and anterior and posterior vaginal repair in the Harris Hospital in Fort Worth, Texas. She was placed in the lithotomy position

under general anesthesia. The operation was carried on for approximately an hour and 25 minutes, during which time her legs were suspended from straps protected by a rubber foam padding. Prior to the operation, the patient had no difficulty with her right leg in regard to foot-drop, pain or cramping. Following the operation, and in the recovery room, she complained of a feeling of numbness from the waist down.

The patient had done well post-operatively except that she developed a foot-drop (common peroneal palsy) of the right leg which persisted up to time of trial.

Plaintiffs, as appellants, appeal from the judgment in the court below, granting defendant/appellee's Motion for Directed Verdict.

This appeal from that judgment, which provided that plaintiffs recover nothing in their suit against the defendant, is based upon fifty-two (52) points of error.

We affirm.

The first ten points complain of the action of the trial court in rendering the judgment it did because, the appellants urge, there was sufficient evidence in the record to raise fact issues as to negligent acts or omissions to act and violations of established medical standards of care in the community on the part of the defendant (appellee) or those under his supervision or control, which would constitute a proximate cause of the injuries and damages sustained by the appellants.

■ The record on this appeal is fully developed as to the facts. The position of the appellee is clearly presented by both direct and cross-examination of the appellee and of the plaintiffs' expert witnesses. All of the expert witnesses, except the appellee, were plaintiffs' own witnesses. Doctors Tulloh and Scheihing, although under the direct supervision of appellee during the operation, were not parties to the suit and, therefore, did not qualify as adverse or hostile witnesses as to plaintiffs' case.

Bell v. Umstattd, 401 S.W.2d 306 (Austin, Tex.Civ.App., 1966, writ dism.); Rule 182, Texas Rules of Civil Procedure.

■ "The test to be applied by an appellate court when considering the propriety of an instructed verdict is that such court should view all testimony adduced on the trial in the light most favorable to the losing party, disregarding all conflicts in testimony, and indulging in every reasonable deduction in favor of the party against whom the instructed verdict was granted. Godwin v. Roberts, 213 S.W.2d 571 (Tex. Civ.App.—Galveston 1948, writ ref'd n. r. e.); Humphreys v. Haragan, 476 S.W.2d 880 (Tex.Civ.App.—Amarillo 1972, no writ). If, under this test, there is no evidence to raise a fact issue to go to the jury, or the moving party is entitled to judgment as a matter of law, then the instructed verdict must be affirmed on appeal. Constant v. Howe, 436 S.W.2d 115 (Tex.Sup.1968); Shubert v. Fidelity & Casualty Company of New York, 467 S. W.2d 662 (Tex.Civ.App.—Houston (1st Dist.) 1971, writ ref'd n. r. e.)." Dalton v. Texas Sulphur Products, Inc., 482 S.W.2d 24 (Amarillo Civ.App., 1972, no writ hist.).

This Court in its application of the rule above enunciated has carefully reviewed all of the direct evidence contained in the record of this case which has any application to the fifteen (15) specific counts of negligence which are contained in the pleadings upon which the appellants base their cause of action. The primary sources of the direct evidence are:

(1) Dr. Hugh Parchman, the appellee, a surgeon. He began practice in 1962, was certified by the American Board of Obstetrics and Gynecology in April, 1965, and is a member of the American College of Obstetricians and Gynecologists.

(2) Dr. William Scheihing, a Board certified Obstetrician and Gynecologist specialist. He assisted in the operation. This witness had little or no recall of this particular operation and no recollection of any unusual event occurring during the surgery.

(3) Dr. James Newton Tulloh, the anesthesiologist. This witness who was necessarily present at all times during the operation did not have a great deal of specific recall. His testimony was to the effect that nothing remarkable occurred during the whole course of the operation.

(4) Dr. Robert Tuby, a licensed physician of New York. He is not a member of any special board in surgery or otherwise. This witness was appellants' non-treating expert witness, who met the appellants for the first time on the night before the trial. He did not read the depositions in the case and did not render a report.

(5) A consultation medical record dictated on June 10, 1966, by Dr. F. C. Rehfeldt.

The above sources of direct evidence in this case will hereafter be referred to by their last names.

In the paragraphs next following we will, in the interest of brevity, abbreviate and italicize the fifteen counts of negligence contained in the pleadings of the appellant and will follow each with a summary of the evidence relating thereto.

(1) *Permitting pressure upon the right leg.* There was no testimony in the record that pressure did occur by any action of the appellee or of his staff. No such pressure was noted by the appellee, Scheihing or Tulloh.

(2) *Failing to inspect for pressure.* The testimony is to the effect that the appellee did inspect. Scheihing had no recall. Tulloh inspected visually throughout the operation and it would be unlikely that pressure would have occurred without his knowledge.

(3) *Failing to insulate from pressure.* Only the ankle is touched and it is protected by foam rubber pads which were three inches thick, and, according to the testimony, sufficient to absorb any undue pressure.

(4) *Failing to inspect for insulation from pressure.* The appellee checked the straps. Tulloh stated there was no need to adjust the straps.

(5) This allegation is in effect the same as (3) above and the same testimony applies.

(6) *In failing to instruct personnel against allowance of pressure.* There was no need to so instruct because it did not occur.

(7) This allegation is essentially the same as (6) and the same testimony applies.

(8) *Placing Mrs. Louis in such a manner that pressure occurred.* Under the evidence she was placed in the lithotomy position and was checked for accuracy of placement. The lithotomy position is the correct position for this operation.

(9) *Failing to prevent strain of the leg.* The testimony was that in the lithotomy position there must be a slight bend in the knee and this alone can cause some stretching. There is no other evidence of stretching having occurred. If the legs are bent the only weight being held by straps is that of the legs and not the buttocks. The height of the stirrups was correct. There was no testimony that the buttocks were elevated off the table. Testimony was to the contrary, i. e., that Mrs. Louis was flat on her back.

Allegations (10), (11), (12) and (13) were essentially the same as (9) and the same testimony applies.

(14) *Compressing the peroneal nerve.* There is no expert evidence in the record concerning compression of the peroneal nerve. There is no evidence that it occurred.

(15) This allegation is essentially the same as (14) and the same evidence applies.

The above summary contains, in substance, all of the direct evidence pertaining to the specific counts of negligence alleged by the appellants.

In order to clarify some of the technical aspects of this cause a general summary of direct evidence is set forth in the paragraphs next following.

After the anesthetic had taken effect upon appellant, she was placed in the lithotomy position. This position is described as lying flat on the back with legs up in the air, suspended by stirrups which come right off the side of the table in a position where they bow out away from the table and go up. No part of the leg is touched at any point except for the ankles, which are protected by thick foam rubber pads placed around them. There must be a slight bend in the knee. The purpose of the foam rubber which goes underneath the strap and rests between the strap and the ankle is to relieve any direct pressure on the ankle itself by the holding strap. The reason for a slight bend in the knee is to give the surgeon maximum exposure to do the surgery. The exposure necessary to conduct the operation would be inadequate if the legs are straight up.

Prior to June 6, 1966, appellee had never had any unusual results or injury of any type from the use of the type of stirrups used and had never heard of any injury sustained from use of this type of stirrups either before or after June 6, 1966.

The physical act of placing Mrs. Louis in the lithotomy position was done by the nurses under appellee's direct supervision. He then inspected the entire apparatus and found that appellant's legs were in proper position.

Nothing unusual or out of the ordinary occurred during the course of the surgery. It went very smoothly. The operation was not interrupted for any reason during the surgery which required approximately one hour and twenty-five minutes. The legs were under the sheets and there is no way that the legs can change position due to the fact that they are suspended in the air by the straps. The lower part of the leg is attached to the body and is not going to move. By looking at her legs, appellee could tell that they remained exactly in the same position as they were. Nothing to appellee's knowledge came in contact with the drapes or her legs during the course of this operation. The straps on the stirrups had not slipped. There was no blow to, nor did anything strike, the patient's leg during the course of the operation or at any other time in the operating room.

The first time appellee was aware that a problem had possibly developed was the morning following the operation when Mrs. Louis told appellee that her leg was numb below the knee and she could not seem to move her foot. Appellee called in the neurologists, Drs. Smith and Rehfeldt. They advised him that they did not know the cause of the peroneal palsy.

Peroneal palsy is not, by any means, normally what appellee expects from this type of surgery. He could think of no cause other than direct pressure which could bring it about. Appellee did surmise that it was possible that Mrs. Louis could have hit her leg upon awakening in the recovery room.

Peroneal palsy is not normally expected to occur in an operation such as this; however, since the customary position for the leg to be in is slightly bent, the very bending position of the knee at its joint is a source, in and of itself, of some pressure or stretching of the nerve. Thus, even if it be assumed that the damage occurred during this surgical procedure, it occurred through some form of pressure or flexion.

There could only be contact if someone leaned on the patient. This did not occur on the occasion in question. There was no touching of the appellant to the stirrups. The height of the stirrups was correct. The amount of flexion of appellant's knee would be minimal, because of the very nature of the stirrups utilized by the appellee. No movement or any other unusual position of the legs occurred. Had a maladjustment occurred, it would have been ap-

parent. This would not happen without the whole of the stirrups turning.

In response to a hypothetical question as to Tuby's opinion regarding causation, the witness replied: "The cause of this peroneal palsy . . . was caused first by an actual tension, a pulling on the lower sciatic nerve, and secondly by pressure over the outer aspect of the knee causing pressure on the common peroneal nerve, so it was a combination of both a pulling type effect plus a pressure type of effect which would give you the combination of not only the common peroneal nerve involvement, which was the predominant one, plus also the lower sciatic, which would be the tibial nerve."

Tuby explained that, in reasonable medical probability, the surgery occurring with the patient being in the lithotomy position and her legs suspended for an hour and twenty-five minutes accounted for the peroneal palsy. Both pressure and pulling upon the peroneal nerve are commonly recognized hazards in the operating room.

A consultation record dictated on June 10, 1966, by Dr. F. C. Rehfeldt, reflects that:

"This patient reported that she experienced no difficulty with her legs until she awakened in the recovery room. . . .

"The problem appears then to be one of peroneal palsy.

"This would not take its origin from the pelvis but from the knee.

" . . . There is nothing about the surgical record that would suggest any basis for trauma to the tibial, anterior tibial group."

In Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779, it was said that, " 'When a case concerns the highly specialized art of treating (disease), with respect to which a layman can have no knowledge at all, the court and jury must be dependent on expert evidence. There can be no other guide, and, where want of skill or attention is not thus shown by expert evidence applied to the facts, there is no evidence of it proper to be submitted to the jury. . . .'

" . . . Here the Courts have been obliged to insist on the dictate of simple logic, . . . that expert testimony on the main fact in issue must somewhere appear in the plaintiff's whole evidence; and for lack of it the Court may rule, in its general power to pass upon the sufficiency of evidence that there is not sufficient evidence to go to the jury. . . .

" . . . both negligence and proximate cause must be so proved, . . . .

" ' . . . when the burden of proof is on the plaintiff to show that the injury was negligently caused by defendant, it is not enough to show the injury, together with the expert opinion that it might have occurred from negligence . . . .'

"And if the plaintiff would rest upon inferences rather than upon direct evidence, he meets the same rule."

In their brief the appellants concede that Bowles represents a correct statement of the present status of the law, except for some modern refinements as to testimony from a doctor of the same school of practice.

The fundamental principles in the law of medical malpractice existed prior to Bowles. In Kaster v. Woodson, 123 S.W. 2d 981 (Austin Civ.App., 1938, writ ref.) which was cited with approval in Bowles, it was said that: " . . . there must be affirmative proof of such negligence or lack of care, and that the injuries complained of resulted therefrom; and such proof can only be established by the testimony of experts skilled in the medical and surgical profession. The courts and juries are not supposed to be conversant with what is peculiar with the science and practice of the profession of medicine and surgery. Such has been the law in all civilized nations since in his Politics, Aristotle wrote: 'As the physician ought to be

judged by the physician, so ought men to be judged by their peers.' "

Appellants suggest some "modern refinements" of the Bowles rule; however, as late as 1967, our Supreme Court in Wilson v. Scott, 412 S.W.2d 299, reaffirmed the principles of Bowles, and additionally adopted the following language of the Supreme Court of Missouri found in Aiken v. Clary, 396 S.W.2d 668, 674:

" 'Without the aid of expert medical testimony in this case a jury could not, without resorting to conjecture and surmise or by setting up an arbitrary standard of their own, determine that defendants failed to exercise their skill and use the care exercised by the ordinarily skillful, careful and prudent physician acting under the same or similar circumstances.' . . . 'Juries should not be thus turned loose and privileged to say, perchance, the method of treating an injury * * * (or an illness) was negligent notwithstanding, for instance, the uncontradicted competent testimony establish(ing) that the uniformly adopted practice of the most skillful surgeons (or physicians) had been followed.' "

The latter ruling in effect holds that while a jury would be at liberty to disbelieve the testimony of appellee and the other eyewitnesses to the operation (Scheihing and Tulloh), or to believe any portion thereof, the mere fact that any part of their testimony might be disbelieved is not evidence that the opposite of what they said is true. Safeway Stores, Inc. v. White, 162 Tex. 473, 348 S.W.2d 162 (1961); Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561 (1952); Creech v. Thompson, 156 Tex. 561, 297 S.W.2d 817 (1957). There must be other facts and circumstances, or the testimony of other witnesses, in evidence to supply that testimony which has been rejected when the question to be determined is whether the case made is one which, in law, is sufficient to fix liability. Texas & P. Ry. Co. v. Brown, 142 Tex. 385, 181 S.W.2d 68, 72 (1944); Heavy

Haulers, Inc. v. Precise, 348 S.W.2d 653 (Texarkana Civ.App., 1961, writ ref., n. r. e.); Gentry v. Southern Pacific Company, 449 S.W.2d 527 (Corpus Christi Civ.App., 1970, affirmed at 457 S.W.2d 889).

When all or any part of the uncontroverted testimony of these witnesses is excluded from the record, there simply exists no other evidence whatsoever of any negligence on the part of the appellee and/or his operative personnel.

The only circumstantial "evidence" before the court is that Mrs. Louis had no problems with her leg prior to the operation, but that in some unexplained manner or for some unknown reason she incurred peroneal palsy which was diagnosed within several days after the hysterectomy. In *this state of the record, the circumstances* cannot be said to raise a fact issue; for, " . . . where circumstantial evidence is relied upon the testimony must establish circumstances which are relied upon to support the inferences drawn; for if the evidence merely shows enough to justify an inference that the circumstances may have existed, from which by a further process of logic it is sought to draw a second inference as to the truth of a basic fact proposition, the connection is too attenuated to raise a jury issue. Furthermore, the circumstances relied upon must be such as to make the truth of the fact proposition inferred more likely than not, for 'if an inference consistent with the existence of a fact in issue is but equally as valid as an inference of *its nonexistence, then the jury may not de-*termine the question. . . . There must be evidence to support the conclusion that the inference of the particular fact is the more reasonable.' " McDonald, Texas Civil Practice, § 11.28.3, pp. 240–242; see also Gulf Bitulithic Co. v. R. T. Herrin Petroleum Tr. Co., 423 S.W.2d 355 (Houston, 1st Dist., 1968, no writ hist.); Briones v. Levine's Department Store, Inc., 446 S. W.2d 7 (Tex.Sup., 1969); Bonner v. Texas Co., 89 F.2d 291, 294 (1937).

"It was held in the case of Ft. Worth Belt Ry. Co. v. Jones, 106 Tex. 345, 166 S. W. 1130, 1132, that 'a presumption of fact cannot rest upon a fact presumed. The fact relied upon to support the presumption must be proved. "No inference of fact should be drawn from premises which are uncertain. Facts upon which an inference may legitimately rest must be established by direct evidence, as if there were the facts in issue. One presumption cannot be based upon another presumption." . . . .' " Rounsaville v. Bullard, 154 Tex. 260, 276 S.W.2d 791 (1955).

Wells v. Texas Pac. Coal & Oil Co., 140 Tex. 2, 164 S.W.2d 660, 663 (1942) held that: " '* * * Even though the original presumption be indulged, the law does not permit the pyramiding of one assumption upon another because an ultimate fact thus arrived at is too conjectural and speculative to support a judgment . . . .' "

" 'A verdict or finding may be based on inferences fairly drawn from the facts in evidence. An inference cannot be based on surmise or speculation, and is without probative force if inconsistent with undisputed or clearly established facts.' " Briones v. Levine's Department Store, Inc., supra.

■ If the appellants rely upon circumstantial evidence to supply a fact issue on negligence, then the record must show that negligence, by inference, is somehow present in terms of the more reasonable probability. Appellants necessarily fail to meet this burden by virtue of the existence within this record of direct evidence of factors wholly unassociated with negligence which may equally have caused the injury complained of.

Under the record in this case it appears to be uncontradicted that peroneal palsy is caused by (1) pressure, (2) stretching, or (3) a combination of the two. Scheihing related that the slight bend in the knee required for the very operation itself is a source of some pressure or stretching of the peroneal nerve. Tuby relates that the requisite lithotomy position, in and of itself, exerts a combination pulling (or stretching) and pressure. Since it is clearly agreed by all medical witnesses that the lithotomy position is required in an operation such as this, and absent any testimony that the length of time required in this operation was excessive, it is just as reasonable to infer that the operation, done properly, is as much the cause of the injury as any negligence.

There still remains the possibility that the injury was wholly unassociated with the operation. Appellee said it was possible that Mrs. Louis could have hit or had pressure directed to her leg on awakening in the recovery room. When she awoke, her bed rails were up. Although there is some testimony that she immediately complained that she had the sensation of no feeling from the waist down, there is no evidence that this sensation, of itself, is not a normal event. There is the distinct possibility that some undetermined amount of pressure could have occurred to injure appellant's leg after she left the confines of the operating room.

■ We find and hold that there is no direct testimony of a negligent act or omission to act on the part of appellee or his personnel and that no standard of care to avoid damage in any form to the peroneal nerve has been shown by expert testimony to have been breached. Under this record it is just as likely that a correct procedure, conducted without any negligence, could have caused the injury. Finally, it appears that a possibility still exists here that the damage complained of could occur out of the operating room and beyond the sphere of appellee's supervision and control.

"There can be many possible 'causes,' indeed, an infinite number of circumstances can cause an injury. But a possible cause only becomes 'probable' when in the absence of other reasonable causal explanations it becomes more likely than not that the injury was a result of its action. This

is the outer limit of inference upon which an issue can be submitted to the jury." Parker v. Employers Mutual Liability Ins. Co. of Wis., 440 S.W.2d 43 (Tex.Sup., 1969, a workmen's compensation case).

We agree with the appellee that the only evidence in this case which is semantically couched in terms of reasonable medical probability (without consideration that the injury could have occurred outside the operating room) is that of Tuby to the effect that the maintenance of the lithotomy position itself, sustained for one hour and twenty-five minutes, caused the peroneal palsy, without regard to any negligent act whatsoever.

The first ten points are overruled.

The eleventh (11th) point asserts the judgment was improper because the act or acts of the defendant with respect to the appellant's (plaintiff's) right leg constituted a battery, unlawful intrusion and trespass upon her person because of lack of consent and was uncontradicted in the record.

This is not a viable point. It is overruled.

"The traditional elements of assault and battery, unlawful use of violence upon another and intent to injure, are absent in most malpractice cases . . . ." Wilson v. Scott, 412 S.W.2d 299 (Tex.Sup., 1967).

█ This is not a case involving a physician's administration of treatment other than or in addition to that consented to by the patient, which factual circumstances almost always form the basis of the medical assault and battery cases. See generally the annotations in 56 A.L.R.2d 695–720; 139 A.L.R. 1370–1375; 76 A.L.R. 562–571. The evidence here does not raise any question of "informed consent." Clearly, there is no evidence before the court that appellee ever operated upon Mrs. Louis' leg or otherwise treated it. The record is also void of any evidence that any pressure whatsoever was applied to the leg by appellee or his operating personnel, either accidentally or intentionally. This is not a case involving a lack of appellants' initial consent to the operation actually contemplated and performed. See Gravis v. Physicians and Surgeons Hospital of Alice, 427 S.W.2d 310 (Tex.Sup., 1968).

Finally, the evidence is wholly void of any intent to injure on the part of appellee, which is, of course, the gist of such an allegation of battery, trespass, etc. Biggins v. Gulf, C. & S. F. Ry. Co., 102 Tex. 417, 118 S.W. 125 (1909); Fisher v. Carrousel Motor Hotel, Inc., 424 S.W.2d 627 (Tex.Sup., 1967).

Points twelve through fifteen assert error of the trial court in sustaining defendant's special exceptions and motion to strike pleadings of the plaintiffs which were based upon the doctrine of res ipsa loquitur, thereby refusing to permit plaintiffs to proceed under this theory because the evidence in the record raised a fact issue that plaintiff's injuries would not have occurred but for the negligence of the defendant or those for whose conduct he is legally liable.

"Under Texas authorities, the doctrine of res ipsa loquitur is not applicable to medical malpractice suits. Bell v. Umstattd, Tex.Civ.App., 401 S.W.2d 306, wr. dism.; Shockley v. Payne, Tex.Civ.App., 348 S.W.2d 775, wr. ref. n.r.e.; Hess v. Millsap, Tex.Civ.App., 72 S.W.2d 923; Barker v. Heaney, Tex.Civ.App., 82 S.W. 2d 417, wr. dism. Defendants' special exceptions to plaintiffs' plea of res ipsa loquitur were sustained by the trial court. Hence the burden was on plaintiffs to raise by evidence a fact issue or fact issues of negligence on defendant doctors proximately causing plaintiffs' injuries as such negligence was specifically pled by plaintiffs." Howe v. Citizens Memorial Hospital of Victoria Co., 426 S.W.2d 882 (Corpus Christi Civ.App., 1968, reversed on other grounds with this point impliedly adopted, 436 S.W.2d 115, 116).

**320**

■ Granted, there are medical malpractice cases with extraordinary factual circumstances where the doctrine has been allowed, such as a failure to remove a sponge, an x-ray burn, or where the wrong part of the body was operated on. Suffice it to say that since no such extraordinary circumstances were herein pled, the court properly sustained defendant's exceptions and disallowed the pleadings, since:

". . . There are only very, very few instances where a pleading of res ipsa loquitur is applicable in medical malpractice cases. . . ." Goodnight v. Phillips, 418 S.W.2d 862, 868 (Texarkana Civ.App., 1967, writ ref., n.r.e.). In our opinion this is not one of them.

■ Regardless of the propriety or impropriety of plaintiffs' pleadings and the action of the trial court in forcing deletion of the res ipsa loquitur theory, error, if any, would here be harmless because of the failure of the evidence to raise the issue. Res ipsa loquitur is merely a rule of evidence whereby negligence of the alleged wrongdoer may be inferred from the mere fact that the accident happened, provided, among other criteria, the character of the accident and the circumstances attending it lead reasonably to the belief that, in the absence of negligence, it would not have occurred. Honea v. Coca Cola Bottling Co., 143 Tex. 272, 183 S.W.2d 968 (1944); Bond v. Otis Elevator Company, 388 S.W. 2d 681 (Tex.Sup., 1965).

■ Res ipsa loquitur is only one peculiar form of circumstantial evidence. Under this record there is no evidence that it is more likely than not that the injury occurred because of negligence. The rarity of the occurrence itself does not mean nor does it force the conclusion that the existence of negligence is the only obvious answer to the dilemma. The mere fact that an event rarely occurs when ordinary care is used does not infer that the event is probably caused by negligence when it does occur.

Tuby's testimony to the effect that pressure and/or pulling are commonly recognized hazards in the operating room lends no relief to appellants' burden, for there is here no proof that these factors cannot, in fact, occur under ideal conditions and the use of the best of skill. "Mishaps of that sort do not occur in the ordinary course of things, true, but is the ordinary course interrupted more often by negligence than by some other cause? Obviously such occurrences speak danger, but whether they speak unreasonable conduct is another matter." 26 Tex.Law Review 257, 262 (1948).

". . . the undisputed expert testimony shows that a fistula is a recognized hazard in all hysterectomies, one of the calculated risks; and while it does not occur very often from any cause, it may occur where the operation is performed under ideal conditions by the most skillful surgeon without negligence on his part." Dees v. Pace, 118 Cal.App.2d 284, 289, 257 P.2d 756, 759 (1953).

It could hardly be said here that general experience and common sense would enable a layman fairly to determine the existence of negligence of the appellee, such as in the foreign object-type cases.

■ As stated in Henderson v. Mason, 386 S.W.2d 879 (El Paso Civ.App., 1964, no writ hist.): ". . . the courts have held that the alleged negligence must be established by testimony of expert witnesses, the only exception being a type of negligence that is obvious to the untrained layman, such as leaving surgical instruments or sponges in the incision, or operating on the wrong portion of the body." See also Thomas v. Beckering, 391 S.W.2d 771 (Tyler Civ.App., 1965, writ ref., n. r. e.); Harle v. Krchnak, 422 S.W.2d 810 (Houston Civ.App., 1st Dist., 1967, writ ref., n. r. e.); 26 Tex.Law Review 257, 258, supra.

■ Res ipsa loquitur does not infer causation. "It has nothing to do with duty or causation, . . . ." 26 Tex.Law Review, 257, 259, supra. Rather, it presup-

poses a known cause or at least a cause established by evidence in reasonable probability.

Even if one or more of several possible causes is established as being reasonably probable, there can still be no application of res ipsa loquitur without expert testimony supplying the essential proof that the reasonably probable cause or causes will not ordinarily occur unless there is negligence.

It is also noteworthy that since there here remains a possibility that the injury could have been sustained outside the operating room, appellants' burden is even greater for they ". . . must produce evidence to establish the probable absence of other causal factors that might have operated after the (plaintiff or) instrumentality passed from the control of the defendant." 26 Tex.Law Review, supra, at page 266.

The possibility that the injury in question could occur outside the operating room was not negated or neutralized.

In Shockley v. Payne, supra, where the injury was to a part of the body not being operated upon the court held that the mere fact that the plaintiff in a given case is unconscious under the influence of anesthesia does not invoke the doctrine of res ipsa loquitur; nor is it controlling that the injury to the body is located at a point other than the location of the surgery. Points twelve (12) through fifteen (15) are overruled.

We can see no necessity in setting forth the excluded testimony which forms the basis of the points 16 through 52.

In determining whether the conclusions or opinions of an expert witness are admissible, the court must exercise a large measure of discretion, with which an appellate court is reluctant to interfere, unless that discretion has been manifestly abused to the prejudice of the complaining party. 31 Am.Jur.2d, Expert and Opinion Evidence, § 3, p. 497. It is for the trial court to determine if the proposed witness has had sufficient opportunity for observation and experience in line with the particular subject under inquiry to entitle him to give his opinion on evidence adduced; and when, in the exercise of sound discretion this has been determined, the appellate court may not disturb the decision unless a clear abuse of discretion is shown. Bolstad v. Egleson, 326 S.W.2d 506 (Houston Civ. App., 1959, writ ref., n. r. e.). See also Lone Star Gas Company v. Thomas, 345 S.W.2d 844 (Fort Worth Civ.App., 1961, ref., n. r. e.); State v. Willey, 351 S.W. 2d 907 (Waco Civ.App., 1961, no writ hist.); Beard Drilling, Inc. v. Steeger, 361 S.W.2d 888 (Houston Civ.App., 1962, reversed on other grounds at 371 S.W.2d 684); Hernandez v. H. S. Anderson Trucking Co., 370 S.W.2d 909 (Beaumont Civ. App., 1963, ref., n. r. e.); City of Austin v. Hoffman, 379 S.W.2d 103 (Austin Civ. App., 1964, no writ hist.); and Standard Motor Co. v. Blood, 380 S.W.2d 651 (Houston Civ.App., 1964, no writ hist.).

"In accord with the general rule, error in the admission or rejection of expert and opinion evidence is not ground for reversal unless it is prejudicial to the rights of the appellant or plaintiff in error. . . ." 31 Am.Jur.2d, Expert and Opinion Evidence, § 7, p. 501. See also Gainesville, H. & W. R. Co. v. Hall, 78 Tex. 169, 14 S.W. 259 (1890); 24 Tex.Jur.2d, Evidence, § 556, p. 50.

Most of the excluded testimony complained of was admitted by the trial court through Dr. Tuby. The exclusion of the testimony of the witnesses Scheihing and Tulloh could not be considered reversible error, since the same evidence from other sources was, in fact, admitted by the trial court. Sherwood v. Medical & Surgical Group, Inc., 334 S.W.2d 520 (Waco Civ.App., 1960, writ ref.).

In Lenger v. Physician's General Hospital, Inc., 455 S.W.2d 703 (Tex.Sup., 1970)

**322**

the Supreme Court, in affirming, held that the trial court erred in excluding the causal "possibility" testimony of the physician; however, the Court there disposed of the appellant's cause by considering all of the physician's testimony, including that which was admitted and that found in the bill of exceptions. Error, then, was held to be harmless. Such is the situation here, if, in fact, the exclusion of the possibility testimony by the trial court was error under this record. The court in Lenger cited the reason for the usual necessity of admittance of the possibility testimony to be that expert testimony concerning possible causation can sometimes aid the trier of fact in evaluating other evidence; otherwise, (the court reasoned) the jury would have no opportunity to decide the case on the basis of the substance rather than the form of testimony. This is not the case under this record.

In Gibson v. Avery, 463 S.W.2d 277 (Fort Worth Civ.App., 1970, writ ref., n. r. e.) the court said: "It is true that before plaintiff rests in a case such as this his whole evidence must show at least a reasonable probability that plaintiff's complications were caused by defendant's negligence."

Appellants' Bill of Exception testimony, as well as the remainer of the record, fails to raise the requisite probability of appellee's non-existent "negligence," the ruling of the trial court could not be reversible error. 4 Tex.Jur.2d, § 942, pp. 576–580. The appellants were not in any way prejudiced by the exclusion of this "evidence," because such evidence was not reasonably calculated to cause and did not cause an improper judgment. Rule 434, T.R.C.P.

Points of error Nos. 16 through 52, complaining of the court's action in excluding excerpts of the testimony of the witnesses Scheihing and Tulloh, are overruled.

It appears clear to this Court that the evidence in his cause, viewed in the light most favorable to appellant's position, fails to prove any negligence on the part of the defendant. Further, such evidence fails to prove that, had there been any negligence, that such was the proximate cause of the injury here involved.

This Court, having overruled all points of error raised by the appellants, herewith affirms the judgment of the trial court.