**Mary H. WILLIFORD, Appellant,**

v.

**Dr. Richard L. BANOWSKY, Appellee.**

**No. 5119.**

Court of Civil Appeals of Texas, Eastland.

March 16, 1978.

Rehearing Denied April 6, 1978.

cut received while obtaining dental treatment. The trial court instructed a verdict for Dr. Banowsky. From the take nothing judgment, Mrs. Williford appeals. We affirm.

In six points of error, Mrs. Williford urges the court erred in granting Dr. Banowsky's motion for instructed verdict because (1) expert medical testimony was not required to establish negligence and proximate causation under the facts of this case; (2) under the doctrine of res ipsa loquitur, a fact question was raised; (3) there was evidence of negligence and proximate cause; and there was evidence of appellee's (4) failure to keep a proper lookout; (5) negligence in the use of mechanical instruments; and, (6) negligence because the injury occurred to a portion of appellant's body other than that which appellee was hired to treat.

She contends, however, "the issue before this court is, in reality, a narrow and uncomplicated, though difficult one. The real issue involved here is whether expert medical testimony is essential to make out a prima facie case."

Although Mrs. Williford argues very forcefully that the rules of ordinary negligence should apply to the case at bar, we disagree. As stated in *Allison v. Blewett*, 348 S.W.2d 182 (Tex.Civ.App.—Austin 1961, writ ref. n. r. e.):

"Regardless of the designation given to this suit it necessarily is a suit for damages for the act of a physician or surgeon regularly engaged in the practice of medicine. Such suits are usually referred to as suits for malpractice which has been defined as follows:

' "Malpractice", also sometimes called "malapraxis" means bad or unskillful practice, resulting in injury to patient, and comprises all acts and omissions of physician or surgeon as such to a patient as such, which may make physician or surgeon either civilly or criminally liable.' *Bakewell v. Kahle*, 125 Mont. 89, 232 P.2d 127, 129.

William J. Fleniken, Jr., Law Offices of C. Coit Mock, Fort Worth, for appellant.

William T. Hankinson, Thompson, Knight, Simmons & Bullion, Dallas, for appellee.

RALEIGH BROWN, Justice.

This is a dental malpractice case.

Mary Williford sued Dr. Richard L. Banowsky for damages as a result of personal injuries allegedly incurred as a result of a

It has also been said that

'A "malpractice" action presents a claim of a hybrid nature, in that in one aspect it is based upon negligence and in another upon breach of contract, and the term "malpractice" may be applied to a single act or to a course of treatment.' *Giambozi v. Peters,* 127 Conn. 380, 16 A.2d 833, 835."

Dr. Banowsky at the time of the alleged injury was engaged in the practice of dentistry, thus the evidentiary rules applicable to medical malpractice cases should apply.

■ This being an appeal from an instructed verdict, we must accept as true the evidence supporting plaintiff's allegations. All conflicts and inconsistencies must be resolved in favor of plaintiff, and we must draw all inferences therefrom most favorable to plaintiff's alleged cause of action. *Constant v. Howe,* 436 S.W.2d 115 (Tex. 1968); and *Hart v. Van Zandt,* 399 S.W.2d 791 (Tex.1965).

It is undisputed that while preparing Mrs. Williford's second bicuspid for a crown, Dr. Banowsky made a laceration one-half to three-fourths of an inch long in her gum tissue. Other than the testimony of Dr. Banowsky, an adverse witness, and by deposition, Dr. Oscar Thompson, the oral surgeon who sutured Mrs. Williford's laceration, Mrs. Williford presented no expert witness, and neither dentist gave favorable opinion testimony for her. She argues that no expert testimony was necessary under the facts of this case concerning negligence and proximate cause because of the doctrine of res ipsa loquitur and the negligence of Dr. Banowsky was such as to be within the common knowledge of laymen. Dr. Banowsky contends that the absence of such testimony is fatal to Mrs. Williford's case because without same, Mrs. Williford failed to present any competent evidence that he committed an act of negligence or that any act of negligence was a proximate cause of her alleged injuries.

By deposition and personally at trial, Dr. Banowsky testified that to prepare a tooth for a crown it was necessary for the enamel to be removed. This is accomplished by grinding the tooth down with a high-speed-rotary instrument. In order to prevent tooth decay at the point where the crown and tooth meet, it is necessary to remove the enamel below the gum line from two to three millimeters. To go below the gum line, a long tapered "burr", which would cause less bleeding than the larger instrument used in removing the enamel for the rest of the tooth, was used.

As Dr. Banowsky was removing enamel below the gum line, the burr became entangled in fibrous material which was either a frenum attachment or a mental nerve. He testified that the entangling fibrous material was unexpectedly high and out of place saying:

"Q And can you tell me your explanation for the reason of the laceration?

A I can say that I feel that the frenum attachment, or the nerve, the middle nerve fibers in this area, were abnormally high and as I was preparing this finishing line below the gum level on the bicuspid, the—these fibers were encountered at a place where they would not normally be expected to be seen, or where I had not experienced them before.

Q Took you by surprise, in other words?

A Yes, sir.

Q That's not something you had encountered before?

A Never had encountered that."

He also testified:

"Q In other words, the mental nerve is not something like the frenum attachment, that you can look at it and tell whether it's abnormally high or not?

A I would say that's correct. Not without dissecting out the area.

Q Can't see that like you can see this— or did see this frenum?

A Frenum attachment.

Q Frenum attachment?

A You cannot always tell how far the fibers of the frenum extend up the tissue or into the tissue either. You can only see where it's attached.

Without dissection, it would be difficult to tell how widespread the attachment is.

.   .   .   .   .

Q Now, the frenum attachment you referred to in Mary Williford, that was severed?

A The exact injury to Mary Williford was not caused particularly by a severing of the frenum. It involved the ligamentous frenum attachment becoming involved with the rotary cutting instrument to such an extent that more of a tearing injury took place, which explains the extent of the—of the injury. The extent of it being cut by the rotary instrument, the fibers became wound around the rotary instrument and it pulled and tore before the instrument could be stopped.

Q So, if I understand you correctly, you're not telling me that the frenum attachment was severed? That was just the area of the cut?

A Yes.

Q Area of the laceration?

A It was in the area.

Q And the drill became entangled in this frenum attachment?

A In the ligamentous strands of the endings of this frenum attachment.

Q What caused that?

A In my judgment, it was because this attachment extended up higher than one would normally look for."

There is no evidence Dr. Banowsky either dropped the drill or slipped in any fashion in handling same.

The Texas Supreme Court in considering malpractice cases has followed traditional principles enunciated in *Bowles v. Bourdon,* 148 Tex. 1, 219 S.W.2d 779 (1949):

"It is definitely settled with us that a patient has no cause of action against his doctor for malpractice, either in diagnosis or recognized treatment, unless he proves by a doctor of the same school of practice as the defendant: (1) that the diagnosis or treatment complained of was such as to constitute negligence and (2) that it was a proximate cause of the patient's injuries   .   .   ."

The court in *Harle v. Krchnak,* 422 S.W.2d 810 (Tex.Civ.App.—Houston (1st Dist.) 1967, writ ref. n. r. e.) said:

"The general rule applicable to cases of medical malpractice is well settled in Texas. The law presumes that the physician has done his work properly. The plaintiff can recover only when it can be affirmatively shown that the diagnosis or treatment was not an error in judgment but a matter of negligence, and that such negligence was the proximate cause of the damages claimed by the plaintiff. *Henderson v. Mason,* 386 S.W.2d 879 (Tex.Civ.App., El Paso 1964, n. w. h.). Ordinarily both negligence and proximate cause must be proven by medical testimony. *Bowles v. Bourdon,* 148 Tex. 1, 219 S.W.2d 779, 13 A.L.R.2d 1 (1949)."

Some courts of civil appeals in Texas have suggested exceptions to the general principle. In *Harle,* the court continued:

"An exception to this rule has been recognized where the nature of the alleged malpractice and injuries are plainly within the common knowledge of laymen, as where the negligence alleged is in the use of mechanical instruments, operating on the wrong portion of the body, or leaving surgical instruments or sponges within the body. In such cases the requirement of medical testimony is eliminated, but the necessity of proof of negligence remains. *Bell v. Umstattd,* 401 S.W.2d 306 (Tex.Civ.App., Austin 1966, writ dism.); *Henderson v. Mason, supra; Dobbins v. Gardner,* 377 S.W.2d 665 (Tex. Civ.App., Houston 1964, writ ref. n. r. e.); *Gorsalitz v. Harris,* 360 S.W.2d 574 (Tex. Civ.App., Houston 1962, n. w. h.); *Edwards v. West Texas Hospital,* 89 S.W.2d 801 (Tex.Civ.App., Amarillo 1935, writ dism.); *Hess v. Millsap,* 72 S.W.2d 923 (Tex.Civ.App., Austin 1934); *Martin v. Eschelman,* 33 S.W.2d 827 (Tex.Civ.App., Texarkana 1930, writ ref.)."

It is generally recognized by Texas courts that the doctrine of res ipsa loqui-

tur is inapplicable to medical malpractice cases. *Rayner v. John Buist Chester Hospital,* 526 S.W.2d 637 (Tex.Civ.App.—Waco 1975, writ ref. n. r. e.); *Harle v. Krchnak,* supra; *Shockley v. Payne,* 348 S.W.2d 775 (Tex.Civ.App.—Amarillo 1961, writ ref. n. r. e.).

As stated in *Rayner,* supra, however:

"An exception to this rule is recognized where the nature of the alleged malpractice and injuries are plainly within the common knowledge of laymen, as where the negligence alleged is in the use of mechanical instruments, operating on the wrong portion of the body, or leaving surgical instruments or sponges within the body. In such cases the requirement of medical testimony is eliminated, but the necessity of proof of negligence remains. *Harle v. Krchnak,* supra; *Shockley v. Payne,* supra; *Goodnight v. Phillips,* Tex.Civ.App., NRE, 418 S.W.2d 862; *Louis v. Parchman,* Tex.Civ.App., NRE, 493 S.W.2d 310; *Stinnett v. Price,* Tex. Civ.App., NRE, 446 S.W.2d 893."

Therefore, Texas courts in medical malpractice cases have required negligence and proximate cause proven by medical testimony and have held the doctrine of res ipsa loquitur inapplicable except where the alleged malpractice and injuries are plainly within the common knowledge of laymen. Such cases include negligence in the use of mechanical instruments, operating on the wrong part of the body, or leaving surgical equipment inside the body. *Irick v. Andrew,* 545 S.W.2d 557 (Tex.Civ.App.—Houston (14th Dist.) 1976, writ ref. n. r. e.); *Hunter v. Robison,* 488 S.W.2d 555 (Tex.Civ. App.—Dallas 1972, writ ref. n. r. e.); *Harle v. Krchnak,* supra.

In the case at bar, Mrs. Williford has alleged she has "suffered severe pain and numbness in her lower lip and her jaw; she has sustained a loss of feeling and sensation in her jaw; she has sustained a loss and/or diminishment of her ability to speak and express herself, causing her great pain and suffering and mental anguish in the past and will in all probability continue to sustain pain and suffering and mental anguish far into the future, if not for the remainder of her natural life, all to the damage of Plaintiff."

None of the recognized exceptions to the requirement of the necessity of medical testimony are applicable in the case at bar. Mrs. Williford makes no claim that any surgical equipment was left inside her body and the evidence conclusively establishes that Dr. Banowsky was not operating on the wrong part of the body. The proper use of a high-speed rotary instrument in a dental treatment is no more a matter plainly within the common knowledge of laymen than the use of an X-ray machine. See *Irick v. Andrew,* supra.

Without qualified medical testimony, we hold there is no evidence of probative force showing that the treatment by Dr. Banowsky was negligent and the proximate cause of Mrs. Williford's injuries.

We have considered and we overrule all points of error. The judgment is affirmed.